[Civ. No. 1261.  Fourth Appellate District.—June 28, 1933.]

STATE OF CALIFORNIA, Petitioner, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY et al., Respondents.

U. S. Webb, Attorney-General, Lionel Browne, Deputy Attorney-General, Thomas Whelan, District Attorney, and Edward W. Goodman, Deputy District Attorney, for Petitioner.

Hillyer & Boldman and F. L. Richardson for Respondents.

BARNARD, P. J.—This is an application for a writ of prohibition to restrain the respondent court from taking proceedings to determine heirship and the right of certain claimants to the money of an estate after the same has been paid into the state treasury.

The facts are not disputed and are as follows: In passing upon the final account of the public administrator in the estate of John C. Kelly, deceased, then pending before it, the respondent court on June 6, 1930, entered what the respondents denominate a final decree which contained, among other things, the following:

"It is further ordered that the final account be approved and settled as presented; that the names, residences and respective shares of the heirs of said deceased cannot at this time be ascertained.

"It is further ordered that the residue of said estate, consisting of Fourteen Thousand, Nine Hundred Eighty-four and 61/100 Dollars ($14,984.61) in cash be paid to the

County Treasurer of San Diego County, California, to be held and disposed of according to law.''

Pursuant to said decree, the money therein referred to was paid to the treasurer of San Diego County on August 11, 1930. On December 13, 1930, one Patrick Kelly filed a petition in the respondent court in the matter of this estate, alleging that he was a nephew of the decedent and his only heir at law, and praying for an order requiring the county treasurer to pay to him the money in his hands belonging to said estate. An order to show cause why the prayer of this petition should not be granted was issued, but the record discloses neither a hearing thereon nor any continuance. On May 7, 1932, Marie Kelly, Edward John Kelly and Julia E. Kelly filed a petition in this same estate alleging that they were the widow, son and daughter, respectively, of the said John C. Kelly, deceased, and praying for an order adjudging them to be his only heirs at law and for an order requiring the county treasurer to pay to them the money referred to. An order was issued requiring all persons to show cause on May 20, 1932, why the prayer of said petition should not be granted. While the record does not show that a hearing in response to this order was ever had or any continuance ordered, the respondents, in their brief, state that a hearing thereon was continued from time to time until the proceedings hereafter mentioned. On December 30, 1932, pursuant to an order made by the respondent court, the treasurer of the county of San Diego paid the money in question to the treasurer of the state of California. On January 17, 1933, a motion for an order vacating and setting aside the prior order directing the county treasurer to pay the money to the state treasurer, which motion was made on behalf of the four claimants above named, came on for hearing before the respondent court and judge. While the decision upon this motion was held in abeyance, the court, over an objection that it was without jurisdiction in the matter, proceeded to take testimony and receive evidence relating to the right of the claimants to receive said money. The court later denied a motion made by the district attorney to strike out all of the testimony and evidence received on the grounds that the court had no jurisdiction, that the decree of June 6, 1930, had become final, no appeal having been taken and no pro-

ceedings having been undertaken to obtain relief under section 473 of the Code of Civil Procedure, that the *res* is now in Sacramento County, the money having been transferred there pursuant to the order of the court, and that under the provisions of the code the Superior Court of Sacramento County now has exclusive jurisdiction of the matter. The matter having been again set for trial, this proceeding was begun, the petition alleging that the court will proceed to determine the issues referred to unless restrained from so doing.

The question to be here decided is whether, under these circumstances, jurisdiction to determine these claims of heirship in this estate is in the Superior Court of San Diego County or whether such jurisdiction is now exclusively in the Superior Court of Sacramento County.

It is the position of respondents that the decree of June 6, 1930, was a decree of distribution to the county treasurer, although not to the heirs of the estate, who were at that time unknown; that under section 1274a of the Code of Civil Procedure it was the duty of the county treasurer to hold this money for one year after he received it; that, under section 1148 of the Probate Code, the court may order such money paid by the county treasurer to the state treasurer only when no heirs or claimants have appeared; and that the respondent court still has jurisdiction since these claimants appeared before the court ordered the money paid by the county treasurer to the state treasurer. Reliance is also placed upon section 1064 of the Probate Code, providing that ''when any person appears and claims the money paid into the treasury, the court making the distribution must inquire into such claim, and if satisfied of his right thereto must grant him a certificate to that effect.''

It may first be observed that no distribution was ordered in the decree of June 6, 1930. In this respect this case is similar to *Estate of Miner*, 143 Cal. 194 [76 Pac. 968], where it is pointed out that the court did not order a distribution, but simply directed the payment of the money remaining in the hands of the public administrator into the county treasury and later ordered it paid by the county treasurer into the state treasury. Not only does the order of June 6, 1930, fail to conform to the requirements of a

decree of distribution, but it does not purport to distribute the money to the county treasurer or to anyone else.

The statutory provision relating to the deposit of moneys of an estate in the county treasury, and later in the state treasury, when the estate is ready to be closed, and the provisions to enable anyone entitled thereto to thereafter withdraw the same from such public depository, fall into two groups, namely, those governing in cases where distribution is made and the distributee for some reason does not appear, and those applying where no distribution is made for the reason that the heirs are unknown at the time the affairs of the estate are settled. Section 1064 of the Probate Code, corresponding to the former section 1696 of the Code of Civil Procedure, section 1274a of the Code of Civil Procedure, and section 1060 of the Probate Code, which is somewhat similar to the former section 1691 of the Code of Civil Procedure, relate in general to property distributed to definite persons who are at the time absent or who cannot be found, or who do not appear and sign a receipt so that the administrator may be discharged. In such cases, it is provided that the money shall remain in the county treasury for one year before being transferred to the state treasury. No such a provision is found with reference to a case where the heirs are unknown when the estate is ready to be closed, and where the money is deposited in the county treasury for that reason. In such a case the only provision is that the county treasurer must transfer the money to the state treasurer on the order of the court.

The situation with which we are here concerned is one of those special cases where the heirs are unknown at the time of the final settlement of the estate and where, instead of entering a decree of distribution, the court orders the money deposited with the county treasurer. At the time the decree of June 6, 1930, was entered, the Probate Code had not been adopted and the corresponding provisions in the Code of Civil Procedure were in effect. At that time section 1272a of the Code of Civil Procedure provided, and it still provides, that when any portion of the estate of a decedent has been received by or deposited with the state treasurer pursuant to section 1737 of that code, the Superior Court of the County of Sacramento shall have full and exclusive jurisdiction to determine the title to said property

and all claims thereto. It further provides for the filing of a petition by any such claimant in the Superior Court of Sacramento County or, where the amount claimed is less than $300, for the presentation to and passing upon the claim by the state board of control. Section 1737 of this code then provided:

"After a final settlement of the affairs of any estate, if there are no heirs, or other claimants thereof, the county treasurer must pay into the state treasury all moneys and effects in his hands belonging to the estate, upon order of the court; and if any such moneys and effects escheat to the state, they must be disposed of as other escheated estates."

While section 1737 of the Code of Civil Procedure was repealed upon the adoption of the Probate Code, almost the identical language just quoted is now contained in section 1148 of the latter code. Section 1737 having been in effect at the time the order of June 6, 1930, was made, the court then had the power and it was its duty to order the money transferred to the state treasurer. While such an order was not made until after section 1737 was repealed, the same provisions were continued in section 1148 of the Probate Code and it could well be held that the court was authorized to complete the order previously made and carry out the provisions of the law existing at the time the affairs of the estate were settled, or that the court could act under section 1272a in conjunction with section 1148 of the Probate Code, then in force.

In any event, we are unable to see that any different result would obtain if the code provisions in force at the time of the order made in December, 1932, transferring the money to the state treasury, be taken as applying. Section 231 of the Probate Code provides that the proceeds of any estate which has been deposited in the state treasury, either after a final decree of distribution or after a judgment of the superior court, by reason of the failure of heirs to make claim thereto, may be recovered upon judgment of the superior court or order of the state board of control, as provided in the Code of Civil Procedure. While there was no decree of distribution here, there was a judgment of the superior court ordering the money paid to the county treasurer by reason of the failure of the heirs to make claim thereto, and thereafter the proceeds of the estate

were deposited in the state treasury. The only provision of the Code of Civil Procedure for recovering money deposited in the state treasury under these circumstances is contained in section 1272a thereof, which provides for a proceeding in the Superior Court of Sacramento County or, if the claim be for less than $300, for a proceeding before the state board of control.

Nor do we think the situation is changed here because these claimants appeared before the order of transfer to the state treasury was made. If it be conceded that the respondent court had jurisdiction to determine the persons entitled to the money of this estate while the same remained in the county treasury, and if it be further conceded that the court erred in ordering the money transferred to the state treasury after these claimants had filed their petitions, the fact remains that the order was made and the money was paid into the state treasury, where it now is. It can now be withdrawn only in the manner provided by the statutes which, under such circumstances, is by a proceeding over which the Superior Court of Sacramento County is given jurisdiction (*Estate of Miner, supra; In re Kehr*, 190 Cal. 401 [212 Pac. 913]). When the money was received by the state treasurer, the probate court in San Diego County lost jurisdiction over the same and over the question of ownership thereof. In effect, the situation is somewhat similar to a case where a probate court loses jurisdiction where money is distributed to a wrong heir. While proper proceedings may be brought to obtain the same by a person in fact entitled thereto, a different proceeding is required. Likewise, a different proceeding is required, when money of this nature is paid into the state treasury, to establish the right of the parties who may be legally entitled thereto to withdraw the same. This proceeding is authorized by section 1272a of the Code of Civil Procedure and takes the place of the equitable remedy available in an ordinary case where an erroneous distribution has been made.

The state has a right to fix the place where it may be sued and whether or not the proceedings provided for such a case as this be considered as a suit against the state, they, like all probate proceedings, are purely statutory and the legislature has placed the exclusive jurisdiction thereof

in the Superior Court of Sacramento County. The question of heirship is inseparably connected with the right to receive the money. If the Superior Court of San Diego County were to attempt to determine whether these claimants were the rightful heirs of the deceased, it could make no effective order because the money has been placed where it can only be reached in the manner provided by law. ■ The respondents urge that these claimants have the right to establish their claim in San Diego County and thereafter look to the county treasurer or his bondsmen for wrongfully transferring the money. Not only does it appear that this officer has transferred the same by order of court, but, if successful in that court, these claimants would then be under the necessity of repeating their showing in a similar proceeding in Sacramento County in order to obtain the money. No such double jurisdiction can exist and, in our opinion, the Superior Court of San Diego County is now without jurisdiction in the premises. We conclude, therefore, that the prayer of the petitioner should be granted.

Let the peremptory writ issue as prayed.

Marks, J., and Jennings, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 24, 1933.