[Civ. No. 8045. Third Dist. Mar. 14, 1952.]

Estate of JOAS IGNACIO COSTA, Deceased. ARTHUR P. MARSHALL et al., Appellants, v. STATE OF CALIFORNIA, Respondent.

Brandenburger & White for Appellants.

Edmund G. Brown, Attorney General, and William J. Power, Deputy Attorney General, for Respondent.

SCHOTTKY, J. pro tem.—Joas Ignacio Costa died intestate in San Francisco on January 12, 1919. At the time of his death he was the owner of two savings accounts in Oakland and San Francisco in the aggregate sum of $2,449.55. Said accounts became dormant and on October 15, 1946, the balances thereof were deposited in the state treasury pursuant to the Abandoned Property Act (Code Civ. Proc., §§ 1274.1-1274.17). On March 17, 1947, Arthur P. Marshall filed a petition pursuant to the provisions of section 1274.10 of the Code of Civil Procedure, alleging the fact of the death of Joas Ignacio Costa and that petitioner was, through his grandmother, the sole heir of said decedent, and sought to recover said accounts for himself. The State of California filed an answer which admitted the existence of the accounts but denied the other allegations of the petition. On January 6, 1950, Sheldon Brandenburger was appointed administrator of the estate of said decedent by the Superior Court in San Francisco, and on February 2, 1950, an amended petition was filed by Arthur P. Marshall and by Sheldon Brandenburger, as administrator of the estate of said decedent, which petition contained substantially the same allegations as the first petition, and the prayer of which sought an order requiring said funds to be paid to Sheldon Brandenburger as such administrator.

An agreed statement of facts was stipulated to by the parties and upon that statement the matter was submitted to the court. Said stipulation shows the following: That decedent left neither ancestor, descendant nor spouse surviving; that decedent was born on the Island of Pico, Azores, Portugal, on or about February 15, 1856; that of decedent's parents there was also born on said Island of Pico, on November 22, 1850, a daughter, Francesca Leopoldino Costa, a sister of decedent; that Francesca married Antonio Gomez Pinho; this sister survived decedent; she resided in San Luis Obispo, California, and died there intestate on or about August 1, 1927, and left surviving two daughters, namely, Mabel Frances Marshall, born in New Bedford, Massachusetts, on June 17, 1876, and Mayme Pinho Anderson, born in said New Bedford on January 4, 1881; that Mabel died intestate in said San Luis Obispo on June 16, 1942, leaving as her next of kin, Manuel A. Marshall, her husband, and Arthur Pinho Marshall, a son, one of the appellants here; that Manuel, the surviving husband, died in said San Luis Obispo on November 11, 1945, leaving said son, Arthur, as his next of kin; that Mayme Pinho Anderson died intestate in San Francisco on May 5, 1944, leaving as her next of kin her nephew, said Arthur.

The agreed statement of facts also contains the following:

"That there was also born the issue of the marriage of said decedent's parents, in addition to the decedent and the daughters, hereinabove referred to, two other sons and two other daughters, all of whom were born in the Azores Islands, Portugal; that no evidence has been introduced herein by petitioners or by respondents, or at all, tending to establish the fact of the survival or death of any of said other sons and daughters of said decedent's parents, or the fact of the survival of any possible issue of any of said other sons and daughters who may have predeceased said decedent.

"That it affirmatively appears from the evidence herein that said Arthur Pinho Marshall, one of the petitioners herein, is the successor in interest of said Francesca Leopoldino Pinho, who was a sister and heir at law of said Joas Ignacio Costa, deceased, and that said Arthur Pinho Marshall will ultimately be entitled to distribution of a portion of said funds on deposit in the Treasury of the State of California, after payment of expenses of administration in the estate of said Joas Ignacio Costa, deceased."

The trial court made findings in accordance with the stipulated facts and concluded that petitioner Arthur P. Marshall was entitled to judgment for recovery of one fifth of the total sum on deposit, and that the copetitioner administrator was entitled to recover nothing. Judgment was entered accordingly and both the administrator and Arthur P. Marshall have appealed.

Appellants and respondent agree that the only question before the court on this appeal is the matter of the construction of section 1274.10a of the Code of Civil Procedure. This section was adopted in 1947 as an urgency measure (Stats. 1947, ch. 342, p. 908) and reads as follows: ·

"Whenever any claim is made or petition filed under Section 1274.10 of this code, or any other provision of law, to recover funds on deposit in the State Treasury by the representative of an estate, or other person, no recovery will be allowed unless it affirmatively appears that there are heirs or legatees who will receive the money or creditors of the deceased owner of the claim whose claims are valid and are claims which were in existence prior to the death of such deceased owner of the claim. Where only creditors exist, and there are no heirs or legatees, said claims shall be allowed only to the extent necessary to pay such claims and the reasonable costs of administration of the estate, including court costs, administrator's fees and attorney's fees. This section shall apply to all claims which are pending at the time that this section goes into effect as well as to claims arising hereafter."

The urgency clause (Stats. 1947, p. 909) reads:

"There is on deposit in the State Treasury sums of money presumed to have been abandoned by owners. This act clarifies the terms and conditions under which heirs, legatees, or creditors may claim said funds. There are pending and unsettled in California numerous problems affecting these funds which should be immediately made subject to the conditions of this act. In order to protect the legal rights of all parties, it is necessary that this act take effect immediately."

It is to be noted that said section relates to a "claim made or petition filed under Section 1274.10," which section was enacted in 1945 and which provides in part as follows:

"Any person who claims property so delivered to the State Treasurer or State Controller on the presumption of abandonment shall file a verified petition in the Superior Court in and for the County of Sacramento, stating facts necessary for the court to determine his right thereto. . . . If, upon

the trial of the issues, the court is satisfied of the claimant's right or title to the money or property claimed, it shall grant him a certificate to that effect. . . .''

Said section provides further that when the money claimed is less than $300, the claimant may, in lieu of filing such petition in the superior court, present his claim to the State Board of Control.*

Appellants contend that only the probate court has jurisdiction to determine who are the heirs and the amount to which each is entitled and that the superior court, not sitting in probate, has no power to take over the functions of a probate court, and that the trial court here erred in not ordering the entire deposit delivered to the appellant administrator to be dealt with by the probate court. Respondent in reply argues that if appellants' contention is sound, then said section 1274.10a is meaningless and that there could have been no purpose in enacting it.

In 1945, title 8A, including sections 1274.1 to 1274.17, was added to the Code of Civil Procedure. It was known as the ''Abandoned Property Act.'' It provided that deposits of money in banks and other credit institutions which remained unclaimed for more than 20 years after the date of deposit or the withdrawal of any part thereof, would be presumed to be abandoned when the whereabouts of the depositor was unknown. Procedure was provided to result in the deposit of such moneys in the. office of the State Treasurer to the credit of the ''Abandoned Property Fund.'' Section 1274.10, hereinbefore quoted from, was a part of said title, and section 1274.10a, also hereinbefore quoted, and the construction of which is involved in the instant case, was added to said title in 1947.

It should be kept in mind that the money or property referred to in said section 1274.10 and 1274.10a are the result of deposits which have remained unclaimed for more than 20 years. There can be no question as to the power of the state to legislate regarding the disposition of abandoned or ownerless property (*Anderson Nat. Bank* v. *Luckett,* 321 U.S. 233 [64 S.Ct. 599, 88 L.Ed. 692, 151 A.L.R. 824]; *Standard Oil Co.* v. *New Jersey,* 341 U.S. 428 [71 S.Ct. 822,

---

*Stats. 1951, ch. 1708, adds title 10, including sections 1300-1355, to the Code of Civil Procedure and repeals former title 8A, including sections 1274.1 to 1274.14. The name of the title is changed from ''Abandoned Property'' to ''Unclaimed Property,'' and section 1274.10a has been superseded by section 1354 with no substantial change in its provisions.

95 L.Ed. 1078]), and such legislation is not an impairment of the constitutional rights of the last owner of the property, even though the legislation is subsequent in time to the creation of bank deposit or other type of property declared to be abandoned. (*Standard Oil Co.* v. *New Jersey, supra.*) ■ As was said by the Court of Appeals of Kentucky in *Commonwealth* v. *Thomas' Adm'r,* 140 Ky. 789 [131 S.W. 797, at page 800]:

"The state may in its generosity, or sense of fairness, say that it will not in such case hold the proceeds against the original claimant, if he subsequently appears, and may provide for his reimbursement. It may do less, as by shortening the time in which it will make reimbursement, or it may exact conditions. In the instance here the state has declared that, for escheated property which it dedicates to purposes of education, it will not make reimbursement. Rather, it fails to make provisions for it in such instances. It was in the competency of the state to so provide, or fail to provide as it saw fit. The policy is one of legislative discretion, and is not a condition precedent to the state's exercise of power." See, also, *Gorny* v. *Trustees of Milwaukee County Orphans Board,* 93 F.2d 107 [115 A.L.R. 1000]; *Engle* v. *State Land Board of Oregon,* 164 Ore. 109 [99 P.2d 1018].

Appellants argue that "the Superior Court of the County of Sacramento, in the exercise of its jurisdiction under the provisions of Section 1274.10 of the Code of Civil Procedure, had the duty to determine only the question of whether or not there were heirs surviving the decedent, to whom distribution would ultimately be made; that upon a finding that there were heirs, or that there was at least one heir, judgment should be rendered in favor of the Administrator for recovery of the entire fund for due administration . . . . whereupon the Probate Court . . . had exclusive jurisdiction to determine to whom and in what proportions the estate descended."

■ While it is true that under section 300 of the Probate Code the title of heirs vests upon the death of a decedent but all of decedent's property shall be subject to the possession of the administrator and to the control of the superior court for the purposes of administration, there can be no question as to the power of the Legislature to provide otherwise with reference to the disposition of moneys deposited in the state treasury under the "Abandoned Property Act."

For as stated in *In re Wilmerding*, 117 Cal. 281, at page 284 [49 P. 181]:

" . . . The right of inheritance, including the designation of the heirs and the proportions which the several heirs shall receive, as well as the right of testamentary disposition, are entirely matters of statutory enactment, and within the control of the legislature. As it is only by virtue of the statute that the heir is entitled to receive any of his ancestor's estate, or that the ancestor can divert his estate from the heir, the same authority which confers this privilege may attach to it the condition that a portion of the estate so received shall be contributed to the state, and the portion thus to be contributed is peculiarly within the legislative discretion."

See, also, *Estate of Watkinson*, 191 Cal. 591 [217 P. 1073]; *Estate of Perkins*, 21 Cal.2d 561 [134 P.2d 231].

■■ It is clear that section 1274.10 provides that the claimant shall file a verified petition in the Superior Court in and for the County of Sacramento, "stating facts necessary for the court to determine his right thereto," and that said superior court shall try the issues with reference to his claim. It is also clear that 1274.10a provides that when such claim is filed "by the representative of an estate, or other person, no recovery will be allowed unless it affirmatively appears that there are heirs or legatees who will receive the money." Upon the record here it affirmatively appears that appellant Arthur P. Marshall is entitled to only one fifth of the money and we believe that the trial court correctly determined that he was entitled to recover only that amount. The four brothers and sisters of Arthur P. Marshall's grandmother were born in Portugal and there was no evidence that they ever left Portugal, so it must be presumed that they remained there and remained citizens of that country. (Code Civ. Proc., § 1963, subd. 32.) Nor was there any evidence that they left heirs who did not remain in Portugal. Hence, so far as appears from the record here, the shares of said four brothers and sisters of decedent would have long since lapsed by virtue of section 1026 of the Probate Code. It would have been a useless act to order the entire sum on deposit to be paid over to appellant administrator, because in that event appellant Marshall would have had distributed to him only one fifth of the amount, and the remainder, less the expenses of administration, would have to be returned to the state treasury.

■ We may take judicial notice of the fact that in formulating and enacting legislation the Legislature has the assistance and advice of a well-trained and very efficient legislative counsel bureau, and that it was therefore aware of the rule laid down in *Estate of Pendergast*, 143 Cal. 135 [76 P. 962], that the interests of nonresidents who fail to appear and claim within five years pass to the state rather than to the other heirs. Hence one of the reasons which may well have actuated the Legislature in seeking to have the rights of heirs determined in the Superior Court of Sacramento County and the share of each heir paid directly to him was to avoid the expenses of administration, particularly in cases where a portion must be returned to the state. Everything that could be determined in the administration of the estate in the probate court could be determined in the Superior Court of Sacramento County under said sections 1274.10 and 1274.10a.

Appellants do not question the power of the Legislature to so provide, but state that it is their "sincere belief that section 1274.10a does not, expressly or by implication, provide for any recovery of a decedent's estate by an heir, where the estate is on deposit in the State Treasury, without the necessity of administration."

However, it is not without significance that the original petition was filed by appellant Marshall individually and prayed that all of said money be paid to him. The administrator of the estate of decedent was not appointed until nearly three years after the original petition was filed, and the amended petition by appellants was thereafter filed praying that the money be paid to the administrator. It is fairly inferable that the amended petition was not filed until it became apparent that appellant Marshall would be unable to prove that he was the sole heir of decedent.

While sections 1274.10 and 1274.10a have not been construed by any appellate tribunal, other sections which provided for proceedings in the Superior Court of Sacramento County have been passed upon. In all proceedings brought to recover escheated property under sections 1272 and 1272a of the Code of Civil Procedure, and in all proceedings brought to recover property distributed to the state pursuant to Probate Code, section 1027, it is necessary for the Sacramento County Superior Court to make determinations as to whether or not a particular claimant is kindred to the decedent, whether or not there are other kindred related to the decedent in closer degree, whether or not there are other kindred re-

lated to the decedent in the same degree as claimant, and the amount which each claimant is to receive. This jurisdiction has been exercised exclusively by the Sacramento County Superior Court since the original Code of Civil Procedure was adopted in 1872.

In *In re Kehr,* 190 Cal. 401 [212 P. 913], the court said:

"The application for a writ of *mandamus* to compel the respondent [Superior Court] to proceed and hear the petition for distribution in this case, where money has been paid to the state treasurer under provisions of section 1737 of the Code of Civil Procedure, is denied, on the ground that petitioner's remedy is by proceedings in the Superior Court of Sacramento County under the provisions of section 1272a of the Code of Civil Procedure. (Stats. 1917, p. 254.)"

In the case of *State of California* v. *Superior Court of San Diego County,* 133 Cal.App. 65 [23 P.2d 1076] (hearing denied), a writ of prohibition was issued to prevent the probate court from hearing and determining who was entitled to money deposited with the state treasurer. The court said at page 71:

". . . When the money was received by the state treasurer, the probate court in San Diego County lost jurisdiction over the same and over the question of ownership thereof. In effect, the situation is somewhat similar to a case where a probate court loses jurisdiction where money is distributed to a wrong heir. While proper proceedings may be brought to obtain the same by a person in fact entitled thereto, a different proceeding is required. Likewise, a different proceeding is required, when money of this nature is paid into the state treasury, to establish the right of the parties who may be legally entitled thereto to withdraw the same. This proceeding is authorized by section 1272a of the Code of Civil Procedure and takes the place of the equitable remedy available in an ordinary case where an erroneous distribution has been made.

"The state has a right to fix the place where it may be sued and whether or not the proceedings provided for such a case as this be considered as a suit against the state, they, like all probate proceedings, are purely statutory and the legislature has placed the exclusive jurisdiction thereof in the Superior Court of Sacramento County. The question of heirship is inseparably connected with the right to receive the money. If the Superior Court of San Diego County were to attempt

to determine whether these claimants were the rightful heirs of the deceased, it could make no effective order because the money has been placed where it can only be reached in the manner provided by law. The respondents urge that these claimants have the right to establish their claim in San Diego County and thereafter look to the county treasurer or his bondsmen for wrongfully transferring the money. Not only does it appear that this officer has transferred the same by order of court, but, if successful in that court, these claimants would then be under the necessity of repeating their showing in a similar proceeding in Sacramento County in order to obtain the money. No such double jurisdiction can exist and, in our opinion, the Superior Court of San Diego County is now without jurisdiction in the premises. We conclude, therefore, that the prayer of the petitioner should be granted.''

And in the case of *Umbsen* v. *Crocker First Nat. Bank,* 33 Cal.2d 599, the court said at page 601 [203 P.2d 752]:

"Under the provisions of the Abandoned Property Act there is a presumption that a bank deposit unclaimed for more than 20 years has been abandoned (Code Civ. Proc., § 1274.3) and the holder thereof is required to report it to the State Controller and subsequently deliver it to the State Treasurer. (Code Civ. Proc., § 1274.6.) It is then held by the State Treasurer subject to recovery by the rightful owner.

"A claimant may establish that he is the rightful owner of abandoned property either before or after its delivery to the State Treasurer (Code Civ. Proc., §§ 1274.6, 1274.10) and may assert his claim within five years from the time judgment has been obtained in an escheat proceeding commenced by the attorney general, provided he is not a party to such a proceeding. (Code Civ. Proc., §§ 1274.9, 1268.) If the claim of the owner is not established within the time prescribed, his rights are forever barred. Under the act, therefore, plaintiff as a claimant of presumptively abandoned property has the burden of showing that she is the owner of the fund.''

We are satisfied that the trial court was correct in concluding that, inasmuch as appellant Marshall had proved that he was entitled to only one fifth of the money of decedent on deposit in the state treasury, the only order that the court could properly make under said sections 1274.10 and 1274.10a was an order that he recover said amount, and that the court did not err in refusing to order all or the remainder of said money paid over to appellant administrator for administration in the probate court. ■ We are convinced, also, that

745 was the intention of the Legislature in enacting said sections 1274.10 and 1274.10a to provide that the Superior Court of Sacramento County should have exclusive jurisdiction to determine what person or persons were entitled to receive said abandoned deposits and then to order said money paid over to the persons so entitled. To require, as appellants contend, the court in the instant case to order the money paid over to the administrator, and then have the probate court determine who is entitled to said money, would, in our opinion, be doing the very thing that the Legislature was seeking to prevent.

The judgment is affirmed.

Peek, J., and Van Dyke, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 12, 1952. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.