## SUCCESSION OF JEAN MARTIN AMAT.

Our laws have always permitted Frenchmen to enjoy the right of possessing and owning property in Louisiana, and under the treaty of 1853, they cannot be subjected to taxes on transfers, inheritance, or any others, different from those paid by the citizens of the United States, or to taxes which are not equally imposed.

APPEAL from the Second District Court of New Orleans, *Thomas*, J.   A. *Robert*, for curator.   J. A. *Thomas*, for absent heirs.

*E. Bermudez, for State Auditor.*—There being no dispute about the facts, the only question presented in this case is whether, by virtue of the 7th Article of the Consular Convention of August 12th, 1853, between the United States and France, the subjects of the latter are exempt from the payment to the State of Louisiana of the ten per cent. tax imposed by its laws upon inheritances accruing to her subjects not domiciled in this State.

In the matter of the *Succession of Dufour*, 10 A. 391, the Supreme Court of this State said:

"That the said provision of said treaty was within the constitutional power of the President and Senate of the United State; that said provision being constitutionally valid, must be obeyed as supreme law; that, consequently, the statute of Louisiana has become, pro tanto, inoperative during the continuance of said treaty'."

But, in the matter of the *Succession of Prevost*, 12 A. 577, the Supreme Court of the United States (19 Howard p. 1) declared, that the obligation of the treaty and its operation in the State, after it was made, depend on the laws of Louisiana; the treaty not claiming for the United States the right of controlling the succession of real or personal property in a State.

Here is the language of Chief Justice Taney, who was the organ of the Court in that case:

". . . . . . . It is proper to say that the obligation of the treaty, and its operation in the State, after it was made, depend upon the laws of Louisiana. The treaty does not claim for the United States the right of controlling the succession of real or personal property in a State, and its operation is expressly limited to the States of the Union whose laws permit it, so long and to the same extent as those laws shall remain in force." . . . . . .

Taking for granted that the view just taken of this case is erroneous, it certainly cannot be claimed that French subjects have been, by that treaty, allowed immunities greater than those enjoyed by citizens of Louisiana residing abroad.

Let us suppose, then, that at his mother's death, J. M. Amat, who was then residing abroad, was a citizen of Louisiana, would he have been exempt from the ten per cent. tax on the assets of her succession, liquidated here, and amounting to upwards of fifteen thousand dollars? Assuredly not.

In the case of the *State* v. *Poydras*, 9 A. 165, the Supreme Court held that "the tax attaches not only to property falling to alien heirs, who are non-residents, but also to citizens of our own State residing abroad."

LABAUVE, J. The Auditor of Public Accounts, and as such representing the State of Louisiana, states [that T. L. Pele and the succession of Jean Martin Amat are severally indebted unto the said State in the sum of $1,502, for this, to wit:

That said T. L. Pele, while testamentary executor of the late Raymond Cazeaux, has failed to retain in his hands, as he was bound to do, the tax of ten per cent. due the State on the amount inherited in said succession by said Jean Martin Amat, from his grandmother, Marie Grossard, widow of said Raymond Cazeaux, and which amounted to $15,020. That said widow Cazeaux departed this life on 26th August, 1863, and that said Jean Martin Amat was not domiciled in this State, and was not a citizen of any other State or territory of the Union, but was a foreigner not exempt from said tax, and has of late departed this life, in this city, and his estate has been opened, and is now administered by Alexis Robert, as curator.

He prays for judgment accordingly.

The answer is a general denial. That the said Julian Neville is not duly elected Auditor of the State of Louisiana; and further, that the law of this State, upon which said plaintiff claims a tax of ten per cent. on all inheritances of foreigners, is unconstitutional and contrary to Article 6 of the Constitution of the United States and Article 7 of the Consular Convention between the United States and France, passed and signed in 1853.

The District Court gave judgment in favor of defendants, and the State of Louisiana took this appeal.

The defendants claim to be exempt from paying the tax claimed against said succession, under the authority of the treaty entered into between France and this Government, signed on the 23d February, 1853, ratified by the United States on the 1st of April, 1853, exchanged on the 11th of August, 1853, and proclaimed by the President on the 12th of August, 1853. The 7th Article of said treaty is relied on to support the defence, reading as follows:

"In all the States of the Union whose laws permit it, so long and to the same extent as the said laws shall remain in force, Frenchmen shall enjoy the right of possessing personal and real property, by the same title and in the same manner as the citizens of the United States. They shall be free to dispose of it as they may please, either gratuitously or for value received, by donation, testament, or otherwise, just as those citizens themselves; and in no case shall they be subjected to taxes on transfers, inheritance, or any others, different from those paid by the latter, or to taxes which shall not be equally imposed."

This very identical question was decided adversely to the claim of the State, by this Court, Mr. Justice Ogden dissenting, in the case of the *Succession of Louis Dufour*, 10 A. 391 ; but the State Auditor, appellant, relies on a *remark* or *obiter dictum* of the Supreme Court of the United States in the case carried up from this Court on a writ of error, in *Jean Louis Prevost*, plaintiff in error, v. *Charles E. Greneaux*, Treasurer of the State of Louisiana. That Court said:

"In affirming this judgment, it is proper to say that the obligation of the treaty, and its operation in the State, after it was made, depend upon the laws of Louisiana. The treaty does not claim for the United States the right of controlling the succession of real or personal property in the State. And its operation is expressly limited "to the States of the Union whose laws permit it, so long and to the same extent as those laws shall remain in force." And, as there is no Act of the Legislature of Louisiana repealing this law and accepting the provisions of the treaty, so as to secure to her citizens similar rights in France, this Court might feel some difficulty in saying that it was repealed by this treaty, if the State Court had not so expounded its own laws, and held that Louisiana was one of the States in which the proposed arrangements of the treaty were ·to be carried into effect."

In that case, the decision of this Court was affirmed, on the ground that the right of this State to claim the tax, had been acquired by the opening of the succession in 1848, before the existence of the treaty; so that, the remark of that Court does not amount to a decision of the question, but strongly intimates what would be their decision in a case like this, had not our predecessors, by their decision in the *Dufour Succession*, virtually decided that Louisiana had accepted the proposed arrangements of the treaty.

We have revised the decision of this Court in the *Succession of Louis Dufour*, 10 A. 391, and we are of opinion that the Court properly applied and correctly interpreted the 7th Article of said treaty.

Our laws have always permitted Frenchmen to enjoy the right of possessing and owning property in Louisiana; and, under the treaty of 1853, they cannot be subjected to taxes on transfers, inheritance, or any others, different from those paid by the citizens of the United States, or to taxes which are not equally imposed.

The judgment of the District Court is affirmed, with costs.