[S. F. No. 10265. In Bank.—September 7, 1923.]

In the Matter of the Estate of FRANCOIS ROMARIS, Deceased. W. J. HYNES, Respondent, v. STATE OF CALIFORNIA, Appellant.

[1] ESTATES OF DECEASED PERSONS—SUCCESSION—NONRESIDENT ALIENS —STATUTE OF LIMITATIONS.—Sections 672 and 1404 of the Civil Code, providing that a nonresident alien may take property in this state by succession, but that unless he appears and claims the property within five years from the time of succession he is barred, are suspended and controlled by the provisions of the treaty of 1853 between France and the United States to the effect that Frenchmen shall enjoy the right of possessing personal and real property by the same title and in the same manner as the citizens of the United States.

[2] ID.—VESTING OF TITLE—CITIZENS AND NONCITIZENS.—Under our laws the property of a person who dies intestate vests in the heirs immediately upon the death of the ancestor; if the heirs are citizens of the United States they become vested with title at once, subject to administration, but if they are nonresident aliens the estate vests in them not only subject to administration, but upon the condition subsequent that if they fail to appear and claim the same within five years their right ceases and the property then vests in the state.

[3] ID.—REGULATION OF INHERITANCE—TREATIES—POWERS OF FEDERAL AND STATE GOVERNMENTS.—The regulation of inheritance of property by aliens is a subject within the scope of the powers conferred by the constitution of the United States upon the treaty-making power of the federal government and is not among the powers the reservation of which to the several states was recognized by the tenth amendment to the federal constitution.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Thomas F. Graham, Judge. Affirmed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Appellant.

P. A. Bergerot, A. P. Dessouslavy and Cullinan & Hickey for Respondent.

MYERS, J.—The State of California appeals herein from a decree of distribution rendered in the above-entitled estate. The decedent died intestate June 1, 1906, in San Francisco, being a resident thereof, and leaving an estate therein consisting of personal property. The decree distributes the estate to his heirs at law, who are nonresident aliens, being citizens and residents of the republic of France, and who did not appear to claim the succession within five years after his death. The appellant contends that they are barred by reason thereof from succeeding to the estate, under the pro-

3. Validity of discrimination against aliens by inheritance tax law as affected by treaty with foreign government, notes, Ann. Cas. 1912A, 857; 4 A. L. R. 1377; 17 A. L. R. 635; 32 L. R. A. 177; 33 L. R. A. (N. S.) 632; L. R. A. 1915E, 327; L. R. A. 1916A, 474.

visions of sections 672 and 1404 of the Civil Code, which provide:

[1] "Sec. 672. *Aliens inheriting must claim within five years.* If a nonresident alien takes by succession, he must appear and claim the property within five years from the time of succession, or be barred. The property in such case is disposed of as provided in title eight, part three, Code of Civil Procedure.

"Sec. 1404. *Aliens may inherit; when, and how.* Resident aliens may take in all cases by succession as citizens; and no person capable of succeeding under the provisions of this title is precluded from such succession by reason of the alienage of any relative; but no nonresident foreigner can take by succession unless he appears and claims such succession within five years after the death of the decedent to whom he claims succession."

Respondent replies that the provisions of the foregoing sections, invoked by appellant, are suspended and controlled by the treaty of 1853 between France and the United States, Article Seven of which reads as follows:

"In all the states of the Union, whose existing laws permit it, so long and to the same extent as the said laws shall remain in force, Frenchmen shall enjoy the right of possessing personal and real property by the same title and in the same manner as the citizens of the United States. They shall be free to dispose of it as they may please, either gratuitously or for value received, by donation, testament or otherwise, just as those citizens themselves; and in no case shall they be subjected to taxes on transfer, inheritance or any others different from those paid by the latter, or to taxes which shall not be equally imposed.

"As to the states of the Union by whose existing laws aliens are not permitted to hold real estate, the President engages to recommend to them the passage of such laws as may be necessary for the purpose of conferring this right.

"In like manner, but with the reservation of the ulterior right of establishing reciprocity in regard to possession and inheritance, the government of France accords to the citizens of the United States the same rights within its territory in respect to real and personal property, and to inheritance, as are enjoyed there by its own citizens."

Appellant argues that the state law and the treaty provision do not conflict for the following reasons: (a) Because the treaty does not grant equality in the matter of inheritance. The argument in support of this is that the treaty provides for equality only with respect to the right of *possessing* property, and that one possesses property by holding it, but only *after* it has come to him by inheritance, purchase, gift, or otherwise, and that the treaty therefore does not apply to the situation here obtaining. This precise question was decided adversely to appellant's contention in *Geofroy* v. *Riggs,* 133 U. S. 258 [33 L. Ed. 842, 10 Sup. Ct. Rep. 295, see, also, Rose's U. S. Notes], and *Bahuaud* v. *Bize,* 105 Fed. 485. (b) Because there was no law of this state in 1853 which permitted equality in the matter of inheritance. The answer to this is that the state constitution of 1849 provided that aliens who then were or who thereafter should become *bona fide* residents of this state were given "the same rights in respect to possession, enjoyment and inheritance of property as native-born citizens." The two cases above cited also decide this question, and hold that such a provision in the law of a state is sufficient to make applicable the provisions of the treaty. So, also, is the existing provision of section 671 of the Civil Code, providing that "any person, whether citizen or alien, may take, hold and dispose of property, real or personal, within this state." (c) Because the treaty does not assume supremacy over state law. This contention also has been ruled adversely to the appellant by the two cases above cited, and, inferentially, by the cases of *In re Stixrud,* 58 Wash. 339 [Ann. Cas. 1912A, 850, 35 L. R. A. (N. S.) 632, 109 Pac. 345]; *Succession of Dufour,* 10 La. Ann. 391; *Succession of Amat,* 18 La. Ann. 403. (See, also, cases cited in note to 32 L. R. A., at page 177.) (d) Because sections 672 and 1404 of the Civil Code create no conflict with the provisions of the treaty, this for the reason that the code sections do not deny the right of such aliens to inherit, but merely undertake to regulate the time and manner by which they may avail themselves of that right. The treaty provides that "Frenchmen shall enjoy the right of possessing personal and real property *by the same title and in the same manner* as the citizens of the United States." [2] Under our laws the property of a person who dies intestate

vests in the heirs immediately upon the death of the an-
cestor. If the heirs are citizens of the United States they
become vested at once with the full property and estate of the
ancestor therein, by a title which is indefeasible except by
the right of the administrator to possess the same for the pur-
poses of administration and to sell the same for the payment
of the debts and expenses of administration, and for the
purposes and in the manner provided by law, in the course
of the administration. (*Brenham* v. *Story,* 39 Cal. 179;
*Bates* v. *Howard,* 105 Cal. 173, 183 [38 Pac. 215]; *Estate of
Hills,* 176 Cal. 232, 234 [168 Pac. 220]; *Estate of Benvenuto,*
183 Cal. 382, 387 [191 Pac. 678].) But under our laws,
considering them as unaffected by the treaty provisions, if
such heirs are nonresident aliens the estate which vests in
them upon the death of the ancestor is not an absolute or
unconditional estate, as in the case of citizen heirs, subject
only to be divested in the process of administration, but it
is a conditional estate, upon the condition subsequent that
if they fail to appear and claim the same within five years
their right ceases and the property then vests in the state.
(*Estate of Pendergast,* 143 Cal. 135, 140 [76 Pac. 962];
*State* v. *Miller,* 149 Cal. 208, 210 [85 Pac. 609].) It cannot
be said under these circumstances that under the state law
as unaffected by the treaty the nonresident alien enjoys the
right of possessing property ''by the same title and in the
same manner as the citizens of the United States.'' This
distinction was pointed out in the *Estate of Aufret,* 187 Cal.
34, 36 [200 Pac. 946, 947], where it was said: ''If they
[the heirs] were such residents or citizens at the time of the
death of the decedent, they would immediately succeed to the
title, free from the condition expressed in section 1404, and
no claim on their part would be necessary to enable them to
take by the succession.''

[3] Finally, the attorney-general urges that the regula-
tion of inheritance of property by aliens is a subject not
within the scope of the powers conferred by the constitution
of the United States upon the treaty-making power of the
federal government, but is among the powers the reservation
of which to the several states was recognized by the tenth
amendment to the federal constitution. He concedes the
existence of ''a long line of adverse decisions,'' but urges
that they are not well-reasoned decisions, and appeals to this

court "to examine and consider and determine this proposition for *itself*, as though the question were for the first time presented to a judicial tribunal." This undertaking would be interesting, but the interest would be purely academic so far as this court is concerned. Upon this question as to the interpretation of the federal constitution the supreme court of the United States is the ultimate authority. There is an unbroken line of decisions by that court upon this question, all to the same effect, covering a period of more than a hundred years, from *Ware* v. *Hylton,* 3 Dall. 199, 235, 255, 281, 282 [1 L. Ed. 568, see, also, Rose's U. S. Notes], decided in 1796, to *Missouri* v. *Holland,* 252 U. S. 416, 432 [11 A. L. R. 984, 64 L. Ed. 641, 40 Sup. Ct. Rep. 382], decided in 1919. The authority and controlling effect of those decisions have been recognized by this court in *People* v. *Gerke,* 5 Cal. 381, *Forbes* v. *Scannell,* 13 Cal. 243, 282, *Blythe* v. *Hinckley,* 127 Cal. 431, 435 [59 Pac. 787], and *In re Terui,* 187 Cal. 20, 24 [17 A. L. R. 630, 200 Pac. 954]. It is true that the particular arguments here presented do not appear to have been made or considered in the earlier cases here referred to, but the point to which those arguments are directed was involved in those decisions. Substantially the same arguments here presented were made to the United States supreme court in *Missouri* v. *Holland, supra,* and to this court in *In re Terui, supra,* and by both courts rejected. The question cannot be regarded as open to reconsideration by this court.

The decree is affirmed.

Lawlor, J., Seawell, J., Waste, J., Lennon, J., and Wilbur, C. J., concurred.