[Civ. No. 8423. Third Dist. May 3, 1955.]

Estate of JOHN ZIMMERMANN, Deceased. LINA DE HAAN et al., Petitioners; HERBERT BROWNELL, JR., as Attorney General of the United States, etc., Intervener and Appellant, v. STATE OF CALIFORNIA, Respondent.

Dallas S. Townsend, Assistant Attorney General, Department of Justice, Paul V. Myron, Deputy Director, Office of Alien Property, Department of Justice, Lloyd H. Burke, United States Attorney, Northern District of California, Valentine C. Hammack, Special Assistant to Attorney General, James D. Hill, George B. Searls and Irwin A. Seibel, Department of Justice, for Intervener and Appellant.

Edmund G. Brown, Attorney General, and William J. Power, Deputy Attorney General, for Respondent.

VAN DYKE, P. J.—This is an appeal by the intervening Attorney General of the United States from that portion of a judgment denying recovery of part of the property that had been distributed to the State of California out of the estate of John Zimmermann, deceased, for want of known heirs. Intervener had entered a vesting order under the Trading with the Enemy Act (50 U.S.C.App. §§ 1-40), thereby claiming to have vested in himself as Alien Property Custodian all interest in the funds so distributed to the State of California that were being claimed by German citizens who were heirs of

the deceased. The facts presented by the record which are without dispute are as follows: John Zimmermann, a resident of Napa, California, died therein intestate on May 19, 1946. After probate of his estate there remained for distribution the sum of $7,373.73. There were no known heirs and hence the court in probate distributed the funds to the respondent State of California by decree of distribution dated June 20, 1947. Pursuant to statute, the funds so distributed were deposited in the state treasury on January 26, 1948. On May 3, 1948, this proceeding was instituted by German heirs of John Zimmermann. They were then, and at all times material herein, enemy aliens. Herein they sought to recover their shares of the funds that had been distributed to the state. In this proceeding the trial court found, and no contention is made that the finding was wrong, that there existed between Germany and the United States the reciprocal inheritance rights required by section 259 of the Probate Code. On April 11, 1952, the Attorney General of the United States issued a vesting order declaring that the interests of said German heirs were thereby vested in him pursuant to the provisions of the Trading with the Enemy Act. (50 U.S.C.App. § 39.) Thereafter he filed a petition in intervention herein praying that he recover as Alien Property Custodian the funds in controversy. The trial court denied the claims of the intervener. In order to state the theory under which the trial court acted it is necessary to now refer to various legislative enactments relative to the inheritance rights of aliens under our laws.

■ It is well settled that the state, in the exercise of its sovereign power, may provide the conditions under which aliens may inherit and, indeed, may wholly prohibit such inheritance. (*Gorny* v. *Milwaukee County Orphans Board,* 93 F.2d 107 [115 A.L.R. 1000]; *Commonwealth* v. *Thomas' Admr.,* 140 Ky. 789 [131 S.W. 797].) So broad is the power of the state to determine the devolution of title to the property of a person dying and leaving property within its boundaries that it may take the property itself and deny any right of anyone to succeed thereto either by will or by succession, or it may provide for transfer by will or succession by inheritance and fix the conditions of such transfer or succession. ■ In the exercise of this plenary power the state may by general laws provide that in the absence of known heirs the property of a person dying intestate shall pass to the state and it may provide further, if it will, that under specified conditions

heirs, who, had they been known, would have taken, may recover property which the state has so received. As was said in *Commonwealth* v. *Thomas' Admr.* 140 Ky. 789, *supra,* p. 800:

". . . The state may in its generosity, or sense of fairness, say that it will not in such case hold the proceeds against the original claimant, if he subsequently appears, and may provide for his reimbursement. It may do less, as by shortening the time in which it will make reimbursement, or it may exact conditions. In the instance here the state has declared that, for escheated property which it dedicates to purposes of education, it will not make reimbursement. Rather, it fails to make provision for it in such instances. It was in the competency of the state to so provide, or fail to provide as it saw fit. The policy is one of legislative discretion, and is not a condition precedent to the state's exercise of power."

In *Gorny* v. *Milwaukee County Orphans Board, supra,* page 109, it was said:

". . . The power to escheat is a sovereign power and when the sovereign escheats he may do so absolutely or conditionally, with or without reservation of right of refund . . . If no law authorizes a refund there can be no refund enforced. There is no common law right of refund . . ."

■ Under our statute laws operative at the time of death of John Zimmermann, alien heirs situated as were these German heirs could succeed to the property of one dying intestate, and our laws so implement this right that immediately upon death of the intestate title is cast in his heirs subject to probate of his estate and subject to the further condition that within five years of such vesting nonresident alien heirs appear and demand the property. (Prob. Code, § 1026; *Estate of Caravas,* 40 Cal.2d 33, 37 [250 P.2d 593]; Prob. Code, § 300; *Estate of Sorensen,* 44 Cal.2d ——, ——— [281 P.2d 870].) ■ The title so vested in the alien nonresident heirs of John Zimmermann was subject to probate and to the provisions of section 1027 of the Probate Code, which section provides that when the probate proceedings have been completed, save for distribution of the residue of the estate, the court must distribute the property remaining for distribution "to known heirs, devisees or legatees entitled to succeed thereto" and if there be a balance belonging to unknown heirs, devisees or legatees then the court must distribute such balance to the State of California. The property so distributed is to be held by the State Treasurer for a period

of five years from the date of the decree making such distribution, within which time any person may appear "in the superior court for the county of Sacramento and claim the estate or any part thereof" but "rights of nonresident aliens shall be governed by the provisions of section 1026 of this code." Section 1026 provides that: "A nonresident alien who becomes entitled to property by succession must appear and demand the property within five years from the time of succession." Applying these statutory enactments to the situation in the instant case, we find that when John Zimmermann died his property, subject to probate, vested in his nonresident German heirs. His estate was probated and the residue thereof was distributed to the state for want of known heirs, pursuant to Probate Code, section 1027. By this decree the state obtained the title, but that title was defeasible if the German heirs appeared within the time limited and asserted a valid claim. They did this by initiating the present proceedings on May 3, 1948, and it is not disputed that the claims of these German citizens were valid claims save for the vesting order of the Attorney General of the United States which followed thereafter. ■ When the German heirs appeared through the initiation of this proceeding and demanded their property the title of the state to the deposited funds was in process of being defeated. This involves, of course, the assumption that their claims were valid, a matter which was concluded by the decree of the trial court in this proceeding, when it found that the claimants were the heirs of John Zimmermann and that reciprocal rights of inheritance existed between Germany and the United States. It follows that when the Attorney General intervened, after the vesting order, he was entitled to have the funds otherwise payable to the German heirs paid over to him under the provisions of the Trading with the Enemy Act.

■ As we understand the position of the respondent, State of California, it claims that by virtue of legislation passed in 1947, after the death of Zimmermann, and prior to the distribution of his estate, the right of the intervener to take was destroyed. We now turn our attention to this legislation. It now appears as section 1354 of the Code of Civil Procedure, which is a part of title 10 of part 3 of said code, having to do with special proceedings of a civil nature. Title 10 refers to unclaimed property which is defined by section 1300 as including property distributable to the state under any provision of law, to which the state is or may become entitled or will be-

come entitled if not claimed by the person or persons entitled thereto within the time allowed by law. Article 3 of said title, consisting of sections 1350-1356, inclusive, refers to the prosecution of claims to such property. This group of sections treats of the manner and of the time for making claims and requires, except where the claimant is entitled to less than $500, that such claimant file a petition stating the facts constituting the claimant's right to recover. If, after a trial upon any issues raised, the court is satisfied of the claimant's right, it grants him a certificate to that effect and upon presentation of that certificate the controller is required to draw his warrant on the treasurer for the amount of money covered thereby; or if the certificate covers any property other than money the officer of the state having possession of the property is authorized by the certificate to deliver the property to the claimant. It is obvious that, saving section 1354, none of the provisions we have referred to would affect the right of either the German heirs or the intervener to recover in the instant proceeding. But the respondent's contention is that section 1354 does, by its provisions, and under the facts presented here, forbid his recovery. As we construe that section, however, it has no application to this proceeding whatever and presents no bar to the relief which the intervener seeks. We think it necessary to quote the section in full; it reads as follows:

"Whenever any claim is made or petition filed by the representative of an estate or other person, under the provisions of this chapter, or under any other provision of law, to recover money or other property deposited in the State Treasury or held by the State or any officer thereof to the credit, or in the name, of any account in the Unclaimed Property Fund, no recovery will be allowed unless it affirmatively appears that there are heirs or legatees who will receive such money or other property or creditors of the deceased owner of the claim whose claims are valid and are not barred, and whose claims were in existence prior to the death of such deceased owner of the claim. Where only creditors exist, and there are no heirs or legatees, said claims shall be allowed only to the extent necessary to pay such claims and the reasonable costs of administration of the estate, including courts costs, administrator's fees and attorney's fees. This section shall apply to all claims which are pending at the time that this section goes into effect as well as to claims arising hereafter."

The respondent asserts that because under the peculiar

708

facts of this case the original petitioners, the German heirs, cannot recover the funds they claim, due to the fact that their right to do so has been destroyed by the vesting order, the intervener also cannot recover because he is neither an heir nor a legatee of decedent John Zimmerman. We think this construction of the section does violence to its entire context. We hold that the section is confined entirely to claims made by heirs or legatees, and to claims in behalf of creditors, of a person who has died while owning a claim to recover deposited property. To attempt to broaden this legislation to include living claimants to such property would nullify that part which forbids recovery unless it appears that the recovery shall be received by heirs or legatees, for there can be in law no heirs or legatees of a living claimant; and of course the provision referring to creditors of a deceased owner of a claim can apply only when the owner of a claim has died. Throughout, the statute refers to ''deceased owners'' of claims. It is apparent that the purpose of the legislation was to prevent futile and unnecessary probating of the estates of deceased owners of claims to deposited property. (*Estate of Costa,* 109 Cal.App.2d 735 [241 P.2d 621].) If such property was ordered delivered to the personal representative of such a deceased owner and as to such decedent there were neither creditors nor heirs nor legatees, the only effect of probate would be to waste a portion of the property in the cost of probate proceedings, and to then return the residue to the state. Other than this, the statute has no effect. It results that the statute offers no bar to the claims of the intervener and that the judgment appealed from, which denied the intervener a recovery of the deposited funds, must be reversed.

The judgment is reversed, with directions to the trial court to enter its judgment granting such recovery.

Peek, J., and Schottky, J., concurred.