5 Cal.3d 62 (1971)
485 P.2d 785
95 Cal. Rptr. 433
Estate of JOHN HORMAN, Deceased.
ULIANA ANDREEVNA GUMEN et al., Claimants and Respondents,
v.
THE STATE OF CALIFORNIA, Objector and Appellant.
Docket No. L.A. 29832.
Supreme Court of California. In Bank.
June 10, 1971.
*67 COUNSEL
Thomas C. Lynch and Evelle J. Younger, Attorneys General, Elizabeth Miller and Ariel C. Hilton, Deputy Attorneys General, for Objector and Appellant.
Slaff, Mosk & Rudman, Edward Mosk and Leon Goldin for Claimants and Respondents.
OPINION
THE COURT.
In this proceeding to determine heirship, the State of California appeals from a decree ordering that certain nonresident aliens are entitled to distribution of specified proportionate shares of decedent's estate.
After decision by the Court of Appeal, Fourth Appellate District, Division Two, reversing the judgment of the trial court, we granted a hearing in this court for the purpose of giving further consideration to the issues raised. Having made a thorough examination of the cause, we have concluded that the opinion of the Court of Appeal prepared by Justice Kaufman and concurred in by Acting Presiding Justice Tamura and Justice Kerrigan correctly treats and disposes of the issues involved and we adopt such opinion as and for the opinion of this court. Such opinion (with appropriate deletions and additions) is as follows:[*]
The State of California appeals from a decree determining that 24 nonresident aliens are entitled to inherit the estate of John Horman. The state contends that four of the heirs (hereinafter claimants) did not "appear and demand" their interest in the estate within five years from the "time of succession" as required by Probate Code, section 1026, and that these interests should escheat to the state.[1]

*68 Facts

John Horman died intestate December 25, 1961, in Orange County, leaving an estate in excess of $450,000. His survivors are 24 persons, including the claimants herein, who, at the date of his death were, and now are, citizens of the U.S.S.R. and reside in various parts of the Soviet Union. The public administrator was appointed administrator of the estate in January 1962. In January 1965, less than five years after the date of death, the State of California filed a petition to determine heirship [pursuant] to Probate Code, section 1080, alleging that the decedent left no surviving spouse or kindred; that there were no heirs entitled to take the estate; and that the State of California was entitled to distribution of the estate as escheated property. There was no allegation of any kind indicating that the state was relying on any failure to comply with Probate Code, section 1026. Indeed, such would have been improper at that point, for the five years had not then elapsed. (1) For purposes of Probate Code, section 1026, "time of succession" means date of death. (Estate of Caravas, 40 Cal.2d 33, 37-38 [250 P.2d 593]; Estate of Laurence, 84 Cal. App.2d 500, 504 [191 P.2d 109].)
Within five years of the date of death, all of the survivors except claimants "appeared and demanded" by filing in the heirship proceeding statements of interest or, in one case, a separate petition to determine heirship. Included in one of the statements of interest was the claim of Stepan Andreevich Lavrik.
On March 17, 1967, after the expiration of the five-year period, and five days before the first trial, a "Second Amended Statement of Interest" was filed by Stepan Andreevich Lavrik in which he alleged that the statements of interest and amended statement of interest theretofore filed were true and correct except that, in addition to himself, his parents had had seven other named children; that the surviving children and the survivors of those children who were deceased were those persons named in the "Second Amended Statement of Interest," to wit, the four claimants herein. It was stated that the "Second Amended Statement of Interest" was filed on behalf of claimants and was intended as a statement of interest on their behalf. This document was signed by Slaff, Mosk & Rudman by Edward Mosk as "Attorneys for Petitioner." It bears at the top of the first page under the printed name and address of said attorneys the designation "Attorneys for Claimants." (Italics supplied.)
*69 On March 22, the matter went to trial on the aforesaid pleadings. At trial it was the state's position that the survivors had not sufficiently established their relationship to the decedent. At no time during the trial did the state assert that claimants had failed to comply with Probate Code, section 1026, nor did the state at this first trial assert that Slaff, Mosk & Rudman were not authorized to represent claimants nor that claimants were not properly before the court. Judgment was for the state. The survivors made motions to reopen and for new trial. Both motions were denied. All 24 survivors, including claimants, appealed from the judgment and the orders denying these motions. On appeal, the judgment was reversed. (Estate of Horman, 265 Cal. App.2d 796 [71 Cal. Rptr. 780].) On the appeal no mention was made of the Probate Code, section 1026 problem, and the problem was not expressly determined.
On Monday, February 3, 1969, one day prior to the date set for retrial, the state filed a pleading entitled, "Answer to Amended Statement of Interest," in which, for the first time, the state asserted claimants' failure to "appear and demand" within the five-year period prescribed by section 1026.[2]
When the matter came on for trial the next day, counsel for claimants moved to strike the state's "Answer to Second Amended Statement of Interest," arguing vigorously that the state had waived the requirement of section 1026 by failing to assert it until so late a date and should be estopped from now attempting to do so. At the conclusion of the trial, the motion to strike was renewed.
The trial court declined to strike the state's answer, but gave judgment for claimants, concluding that "Probate Code 1026 requiring [nonresident] alien heirs to claim within five years of date of death of the decedent was tolled between September 12, 1961 and August 2, 1966."
This conclusion was based upon the court's finding as follows: "11.... It is true that said claimants had no effective manner in which to appear herein during the period of time commencing with the opening of the within estate and ending upon their appearance herein in that between November 8, 1961 when hearing was denied by the Supreme Court of California in Estate of Gogobashvele [sic], 195 C.A.2d 503, and August 2, 1966 when the Supreme Court changed the law of California in Estate of Larkin, 65 C.2d 60, the law of the State of California prevented alien heirs residing in the USSR, irrespective of the merits of their claims in California estates, from inheriting their shares of Calfornia estates by *70 reason of the operation of Probate Code 259 as interpreted in Estate of Gogobashvele [sic]. That to have required said claimants to have appeared herein under such state of law would have required them to perform an idle act in that said claimants, during such period, were unable to obtain any effective relief in the courts of this state, and to that extent the courts of this state were effectively closed to them."

Contentions
On this appeal claimants contend (1) that the trial court was correct in its conclusion that the period prescribed by Probate Code, section 1026 was tolled; (2) that, even if the trial court's conclusion was erroneous, the state had waived the requirement of the section and was precluded from asserting it at the second trial; and (3) that, if the judgment cannot be sustained on either of these bases, Probate Code, section 1026 is unconstitutional for a number of reasons.
The state contends (1) that the trial court was incorrect in concluding that the five-year period prescribed by section 1026 was tolled, and (2) that in any event, claimants still have not properly appeared and demanded because the "Second Amended Statement of Interest" was not filed by them but by Stepan Lavrik and his attorneys.

Tolling
The state urges that the period prescribed in Probate Code, section 1026 is not a statute of limitations but, rather, a substantive aspect of our probate law, divesting a nonresident alien of his interest if he fails to appear and demand within the time prescribed. The cases do indicate the substantive nature of the section. (See Estate of Sorensen, 44 Cal.2d 306, 308 [281 P.2d 870]; Estate of Romaris, 191 Cal. 740, 744 [218 P. 421]; Estate of Pendergast, 143 Cal. 135, 140 [76 P. 962]; Estate of Laurence, supra, 84 Cal. App.2d 500, 505-506. (2, 3) Be that as it may, however, it is established that the five-year periods prescribed by sections 1026 and 1027 of the Probate Code are subject to tolling under appropriate circumstances. (Estate of Caravas, supra, 40 Cal.2d 33, 41-42; Estate of Spinosa, 117 Cal. App.2d 364, 370-372 [255 P.2d 843].)
The question remains, however, whether on the facts of the instant case, the court below was justified in finding the period tolled. Claimants urge that it would have been futile for them to "appear and demand" between the decision in Estate of Gogabashvele, 195 Cal. App.2d 503 [16 Cal. Rptr. 77], and the decision in Estate of Larkin, 65 Cal.2d 60 [52 Cal. Rptr. 441, 416 P.2d 473]. Gogabashvele was decided September 12, 1961 and held *71 that reciprocal rights of inheritance as were required by section 259 of the Probate Code[3] did not exist between the United States and the U.S.S.R. Larkin was decided August 2, 1966 and, in effect, disapproved Gogabashvele. Claimants call our attention to cases holding that, despite mandatory language, the five-year period prescribed in Code of Civil Procedure, section 583 for bringing a case to trial is tolled by circumstances showing physical or legal impossibility, futility or such impracticability as to amount to practical impossibility (Brunzell Constr. Co. v. Wagner, 2 Cal.3d 545, 550-551 [86 Cal. Rptr. 297, 468 P.2d 553]; Rose v. Knapp, 38 Cal.2d 114, 117 [237 P.2d 981] and cases there cited; Christian v. Superior Court, 9 Cal.2d 526, 530-533 [72 P.2d 205, 112 A.L.R. 1153]), and urge that we apply the doctrine of these cases to Probate Code, section 1026.
We could agree with claimants that the implied exceptions found in the cases dealing with Code of Civil Procedure, section 583 should be, on a proper showing, applied to Probate Code, section 1026. (Cf. Estate of Caravas, supra, 40 Cal.2d 33, 39-41.) (4) The difficulty is that the circumstances presented by the case at bench do not demonstrate legal or physical impossibility, practical impossibility or futility. In the first place, notwithstanding the rationale of decision (see Estate of Larkin, supra, 65 Cal.2d at pp. 80-84), Gogabashvele could only decide that in that case the existence of reciprocal inheritance rights was not established. Claimants in the case at bench were in no way prevented by that case from presenting their claim and presenting proof of a change in the law or administration of the law of the U.S.S.R., nor were they prevented from challenging the soundness of the reasoning in Gogabashvele. That is precisely what was successfully done by the claimants in Larkin. Moreover, the other 20 survivors herein did not find it impracticable or futile to "appear and demand" within the five-year period notwithstanding Gogabashvele, and there is nothing in the record to indicate that claimants herein relied on Gogabashvele in failing to "appear and demand" within the prescribed time.
Under claimants' tolling theory, whenever a precedent was overturned recognizing a right of action theretofore denied by case law, all persons who had been aggrieved between the decision of the precedent case and the decision of the overruling case could then file suit, no matter how many years had elapsed between. Such a proposition cannot be sustained. A contention identical in principle was rejected in Bates v. Gregory, 89 Cal. 387, 392-397 [26 P. 891].
We conclude, therefore, that the trial court's finding and conclusion that *72 the five-year period prescribed by section 1026 was tolled in the case at bench are erroneous.

Have Claimants Now Appeared?
Before turning to the discussion of more serious problems, we deal briefly with the contention that, even now, claimants have not "appeared and demanded" because the "Second Amended Statement of Interest" was made on their behalf by Stepan Lavrik and the attorneys acting on his behalf.
(5) There is no prescribed procedure for "appearing and demanding." (Estate of Sorensen, supra, 44 Cal.2d 306, 309; Estate of Aufret, 187 Cal. 34, 37 [200 P. 946]; State v. Smith, 70 Cal. 153, 156 [12 P. 121].) It is not contended that a person may not "appear and demand" by filing a statement of interest signed by his attorney in response to a petition to determine heirship. (Cf. Lyons v. State of California, 67 Cal. 380, 383-384 [7 P. 763].) Indeed, that is the manner in which the other heirs proceeded in the case at bench.
It appears to be the Attorney General's argument that the "Second Amended Statement of Interest" was signed by the attorneys not as attorneys for claimants but as attorneys for Stepan Lavrik. This contention is not supported by the record. Implicit, if not expressed, in the trial court's finding number 11, above, and the judgment is a finding that claimants did "appear and demand," albeit belatedly. This finding is supported by the heading on the "Second Amended Statement of Interest," wherein the attorneys indicate that they represent "Claimants." (Italics supplied.) (6) Moreover, the question of the attorneys' authority to represent claimants was not presented to the trial court by the state, and it cannot assert this matter for the first time on appeal. (Cf. Estate of Marshall, 120 Cal. App.2d 747, 752 [262 P.2d 42] [disapproved on different grounds in Kusior v. Silver, 54 Cal.2d 603, 616 (7 Cal. Rptr. 129, 354 P.2d 657)]; and see Algeri v. Tonini, 159 Cal. App.2d 828, 832 [324 P.2d 724].)

Waiver  Estoppel  Law of the Case
Claimants contend that by failing during the first trial to raise the issue, the state waived the five-year requirement of Probate Code, section 1026 and was estopped to assert it [at] the second trial. It is generally held that a defense based on a statute of limitations is waived unless it is pleaded or presented to the trial court in some fashion. (Bliss v. Sneath, 119 Cal. 526, 528 [51 P. 848]; Taylor v. Sanford, 203 Cal. App.2d 330, 345 [21 Cal. Rptr. 697].) The state contends, however, that after the reversal on the first appeal in this court, the posture of the case was as if it had not been *73 tried, and the state could amend its pleadings in the discretion of the trial court. (See 3 Witkin, Cal. Procedure (1954) pp. 2382-2383 and cases there cited.) This contention must prevail. (7) While piecemeal litigation is to be discouraged, and while in the interest of the orderly administration of justice, the trial court should exercise caution in permitting the amendment of pleadings after trial and appeal (Dressler v. Johnston, 131 Cal. App. 690, 695 [21 P.2d 969]), nevertheless, such amendment is a matter within the discretion of the trial court (Trower v. City and County, 157 Cal. 762, 769 [109 P. 617]; see Dressler v. Johnston, supra, at p. 694.) The Trower case expressly approved the trial court's exercise of discretion in permitting an amendment to set up a defense of limitations not raised in the first trial or appeal. (See also Copp v. Millen, 11 Cal.2d 122, 131 [77 P.2d 1093].)
(8) When the state first filed its petition to determine heirship, the section 1026 problem did not exist, inasmuch as five years had not passed since the death of the decedent. The problem first arose, not expressly but implicitly, at the time of the filing of the "Second Amended Statement of Interest." But this was only five days prior to the first trial, and it is perhaps understandable that the problem was overlooked by the state in the first trial. When the state placed the matter in issue at the second trial, claimants did not claim surprise or request a continuance. Their counsel fully and articulately presented to the trial court all of the arguments advanced and most of the authorities cited on this appeal. Nor is it suggested that any additional evidence in respect to the issue might have been adduced. Under these circumstances, the trial court acted within its discretion in permitting the state to assert the issue at the second trial. (Trower v. City and County, supra, 157 Cal. 762.)
At our request, the parties have treated in their briefs the question whether the state is foreclosed from raising the section 1026 problem by the doctrine of law of the case. (9) Generally, the doctrine of law of the case does not extend to points of law which might have been but were not presented and determined in the prior appeal. (DiGenova v. State Board of Education, 57 Cal.2d 167, 179 [18 Cal. Rptr. 369, 367 P.2d 865].) As an exception to the general rule, the doctrine is also held applicable to questions not expressly decided but implicitly decided because they were essential to the decision on the prior appeal. (Nevcal Enterprises v. Cal-Neva Lodge, Inc., 217 Cal. App.2d 799, 804 [32 Cal. Rptr. 106]; see 3 Witkin, Cal. Procedure (1954) p. 2429.) The questions presented and determined on the prior appeal in this case were whether the survivors had established the identity of the decedent and their relationship to him, the admissibility of certain evidence, the discretion of the trial court in denying the motions to reopen and for new *74 trial and the trial court's failure to rule on the admissibility of certain evidence. (Estate of Horman, supra, 265 Cal. App.2d 796.) (10) The Probate Code, section 1026 problem was not raised by either party and was not expressly determined by the court. Neither can it fairly be said that determination of the issue was essential to the decision. We have concluded, therefore, that the decision on the prior appeal did not foreclose the state from asserting this matter at the second trial.

Constitutionality of Probate Code, Section 1026
Claimants' contentions for unconstitutionality are numerous and somewhat interrelated. Perhaps the most difficult questions are posed by claimants' contention that the statutory scheme of which Probate Code, section 1026 is a part constitutes an invidious discrimination against nonresident aliens depriving them of equal protection of laws under the Fourteenth Amendment to the United States Constitution.
(11) It is well established that the equal protection clause of the Fourteenth Amendment applies to aliens within the territorial jurisdiction of a state (Truax v. Raich, 239 U.S. 33, 39 [60 L.Ed. 131, 134, 36 S.Ct. 7, 9-10]; Yick Wo v. Hopkins, 118 U.S. 356, 369 [30 L.Ed. 220, 226, 6 S.Ct. 1064, 1070]; Purdy & Fitzpatrick v. State of California, 71 Cal.2d 566, 578 [79 Cal. Rptr. 77, 456 P.2d 645].) We have been cited to no case, however, applying the equal protection clause to a nonresident alien. Indeed, the equal protection clause applies by its language only "to any person within its [the state's] jurisdiction," and there is some indication in the cases that it is inapplicable to nonresident aliens. (See Johnson v. Eisentrager, 339 U.S. 763, 771 [94 L.Ed. 1255, 1262, 70 S.Ct. 936, 940]; Cermeno-Cerna v. Farrell, 291 F. Supp. 521, 528; Moody v. Hagen (1917) 36 N.D. 471 [162 N.W. 704, 706-707].) As has previously been noted, however, upon the death of the decedent, claimants succeeded to interests in the estate of the decedent subject to divestment (Estate of Sorensen, supra, 44 Cal.2d 306, 308; Estate of Romaris, supra, 191 Cal. 740, 744; Estate of Pendergast, supra, 143 Cal. 135, 140; Estate of Laurence, supra, 84 Cal. App.2d 500, 505-506), and it is urged that the ownership of such property interests in the State constitutes claimants as persons "within the jurisdiction." (See 51 Georgetown L.Rev. 470, 484-485; see also 47 Iowa L.Rev. 105, 114-115; and cf. 28 U.Chi.L.Rev. 1, 5-10.)
Assuming, without deciding, the validity of the latter proposition, we are not persuaded that the statutory scheme constitutes an unconstitutional discrimination against nonresident aliens. The major contention is that by virtue of Probate Code, section 1026 and Code of Civil Procedure, *75 section 1336 nonresident aliens must "appear and demand" within five years from the date of death, whereas, under Probate Code, section 1027 [and] Code of Civil Procedure, section 1441 all other persons may "appear and demand" within five years from the date of the decree making distribution. It is argued that there is no valid purpose for the state's imposing a shorter period for nonresident aliens than for other persons and that, even if such purpose can be divined, the imposition of the shorter period for nonresident aliens is irrational and contrary to logic and fairness in that, if anything, a nonresident alien, because of his remoteness, should be allowed a longer period in which to "appear and demand."
(12) There is no constitutional requirement of uniform treatment. (In re Ricky H., 2 Cal.3d 513, 522 [86 Cal. Rptr. 76, 468 P.2d 204]; Whittaker v. Superior Court, 68 Cal.2d 357, 367 [66 Cal. Rptr. 710, 438 P.2d 358]; Bilyeu v. State Employees' Retirement System, 58 Cal.2d 618, 623 [24 Cal. Rptr. 562, 375 P.2d 442].) (13) Legislative classification is permissible when made for a lawful state purpose and when the classification bears a rational relationship to that purpose. (McGowan v. Maryland, 366 U.S. 420, 425-426 [6 L.Ed.2d 393, 399, 81 S.Ct. 1101, 1104-1105]; Royster Guano Co. v. Virginia, 253 U.S. 412, 415 [64 L.Ed. 989, 990, 40 S.Ct. 560, 561]; Whittaker v. Superior Court, supra, 68 Cal.2d 357.) (14, 15) "Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary.... [Citations.] A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it." (Sacramento M.U. Dist. v. P.G. & E. Co., 20 Cal.2d 684, 693 [128 P.2d 529]; Bilyeu v. State Employees' Retirement System, supra, 58 Cal.2d 618, 623; McGowan v. Maryland, supra, 366 U.S. 420; In re Ricky H., supra, 2 Cal.3d 513.)
(16) We recognize that a stricter standard is applied in testing legislation involving "suspect classifications" such as classifications based on race, nationality or alienage or involving "fundamental interests" such as the right to vote, the right of interstate movement and the right to seek employment. (Purdy & Fitzpatrick v. State of California, supra, 71 Cal.2d 566, 578-579 and authorities there cited.) However, the distinction in the statutory scheme in question is not, strictly speaking, based upon alienage. Resident aliens are treated the same as citizens. The point of distinction is residency as opposed to nonresidency. Nor is the distinction based on race or nationality. The statutory scheme applies to all nonresident aliens alike, regardless of their race or nationality. Neither can *76 the interests here involved be classified as fundamental. (17) "`Rights of succession to the property of a deceased, whether by will or by intestacy, are of statutory creation, and the dead hand rules succession only by sufferance. Nothing in the federal constitution forbids the legislature of a state to limit, condition or even abolish the power of testamentary disposition over property within its jurisdiction.' (Irving Trust Co. v. Day (1942) 314 U.S. 556, 562 [86 L.Ed. 452, 457, 62 S.Ct. 398, 137 A.L.R. 1093].) `So broad is the power of the state to determine the devolution of title to the property of a person dying and leaving property within its boundaries that it may take the property itself and deny any right of anyone to succeed thereto either by will or by succession....' (Estate of Zimmerman (1955) 132 Cal. App.2d 702, 704 [283 P.2d 68]; see also Estate of Bevilacqua (1948) 31 Cal.2d 580, 582 [191 P.2d 752]; Estate of Knutzen, supra, 31 Cal.2d 573, 578 [191 P.2d 747], and cases cited.)" (Estate of Larkin, supra, 65 Cal.2d 60, 80-81.) (18) There being no "suspect classification" or "fundamental interest" involved, the stricter standard discussed and applied in Purdy & Fitzpatrick v. State of California, supra, is not here applicable.
(19) The statutory scheme of which Probate Code, section 1026 is a part appears to us to have two purposes, both of which constitute legitimate state governmental concerns. Obviously, the state has a legitimate concern that property within its borders should have an ascertainable title within a reasonable period of time so that it can be sold, developed and otherwise dealt with, and one purpose of the statutory scheme is to fix a time at which title can be definitely ascertained. A second purpose would appear to be the state's preferring itself over nonresident aliens, at least when they have not appeared and demanded within the five-year period. This, too, is a permissible exercise of the state's power. (Cf. United States v. Burnison, 339 U.S. 87, 95 [94 L.Ed. 675, 682-683, 70 S.Ct. 503, 508]; see also Estate of Zimmerman, supra, 132 Cal. App.2d 702, 705.)
(20) The distinction between nonresident aliens and other persons is rationally related to these purposes. We think the rational connection between the distinction and the purpose of the state's preferring itself to a potential heir is obvious. Citizens and resident aliens are likely to have substantial contacts and relationships with the state, directly or indirectly through the national government or other state governments, that nonresident aliens lack. (See, discussing such contacts and relationships, Moody v. Hagen, supra, 36 N.D. 471, 486.) In recognition of these connections and relationships, it is not unreasonable that the state should defer its power of escheat as to resident aliens and citizens for a longer period than as to nonresident aliens.
*77 These same considerations rationally connect the distinction to the other purpose of the statutory scheme. As already noted, the existence of unascertainable property titles constitutes a problem for and a burden to the state. Final escheat of the property to the state removes the problem and the burden. Once again, however, it is not unreasonable for the state, in deference to and recognition of its more probable relationship to and connections with citizens and resident aliens, to indulge such persons in a somewhat longer period prior to final escheat than that accorded nonresident aliens.
Claimants' argument that, because of their remoteness, they should be accorded a longer period of time than others in which to "appear and demand" is not without logic. It must be recognized, however that this very remoteness serves to distinguish the nonresident alien and to support the distinction and classification found in the legislation. Because of the remoteness of nonresident aliens and their probable total lack of contact with the state. it would not be unreasonable for the state to conclude that if no nonresident heir has appeared within five years from the death of the decedent, none is likely thereafter to be discovered. Moreover, this argument of claimants is misdirected. It is more appropriately addressed to the Legislature. (21) Courts do not sit as super-legislatures to determine the wisdom, desirability or propriety of statutes enacted by the Legislature. (Griswold v. Connecticut, 381 U.S. 479, 482 [14 L.Ed.2d 510, 513, 85 S.Ct. 1678, 1680]; People v. Hurd, 5 Cal. App.3d 865, 877 [85 Cal. Rptr. 718].) Having determined that the statutory scheme serves a legitimate state purpose and that the classification made has a rational relationship to that purpose, the court's function is at an end.
Claimants also urge that the statutory scheme is unconstitutionally discriminatory as to nonresident aliens who have "appeared and demanded" within the prescribed time and, possibly, even as to citizens who might claim to inherit through a nonresident alien heir who had failed to "appear and demand" within the prescribed time. This argument is based upon the proposition that, where a nonresident alien heir exists but fails to "appear and demand" within the prescribed time, his portion of the estate does not revert to the residue of the estate to be distributed to other eligible heirs, but, instead, is escheated to the state (Estate of Pendergast, supra, 143 Cal. 135, 140, Estate of Meyer, 107 Cal. App.2d 799, 809 [238 P.2d 597]), whereas when a resident alien or citizen fails to claim within the prescribed time, his portion reverts to the estate for distribution to other eligible heirs. No authority is cited to establish the second part of this proposition, [ ] [but assuming arguendo that claimants' statement may be correct, at least in some circumstances] it avails claimants nothing, for the discrimination charged is not against them. (22) To challenge the *78 constitutionality of a statute on the ground that it is discriminatory, the party complaining must show that he is a party aggrieved or a member of the class discriminated against. (In re Weisberg, 215 Cal. 624, 630 [12 P.2d 446]; DuBois v. Land, 212 Cal. App.2d 563, 567 [28 Cal. Rptr. 167].)
(23a) Claimants next contend that Probate Code, section 1026 is unconstitutional in that it deprives claimants of a vested property right without due process of law and contrary to international standards of justice. (See Rest.2d Foreign Relations Law, §§ 165, 166 and 185.) As we understand it, the argument is that once the state recognizes a vested property interest in a nonresident alien, it cannot thereafter deprive him of that property interest unreasonably, arbitrarily and without compensation. The problem is aggravated, it is suggested, by the fact that, of all persons, the nonresident alien is least likely to obtain actual notice from the types of notification prescribed in Probate Code, sections 1080 and 1200. These contentions misconceive the nature of the rights of succession by a nonresident alien in California and are not meritorious.
(24) Subject to the treaty-making power of the national government (Zschernig v. Miller, 389 U.S. 429, 441 [19 L.Ed.2d 683, 692, 88 S.Ct. 664, 671]; Estate of Meyer, supra, 107 Cal. App.2d 799, 804), and subject to the exclusive and paramount power of the federal government to deal with foreign affairs (Zschernig v. Miller, supra, 389 U.S. 429; Estate of Kraemer, supra, 276 Cal. App.2d 715) and subject to the equal protection and privilege and immunity guaranties of the United States Constitution, the state has full power to regulate the matter of the descent and distribution of decedents' estates within its borders. (Estate of Larkin, supra, 65 Cal.2d 60, 80-81 and authorities there cited.) California has seen fit to vest in nonresident alien heirs a conditional interest in a decedent's estate. (25) "[T]he estate which vests in them upon the death of the ancestor is not an absolute or unconditional estate, as in the case of citizen heirs, subject only to be divested in the process of administration, but it is a conditional estate, upon the condition subsequent that if they fail to appear and claim the same within five years their right ceases and the property then vests in the state." (Estate of Romaris, supra, 191 Cal. 740, 744; Estate of Sorensen, supra, 44 Cal.2d 306, 308; Estate of Pendergast, supra, 143 Cal. 135, 140; Estate of Laurence, supra, 84 Cal. App.2d 500, 505-506.) (23b) Since the state has the power to withhold absolutely the right of succession but has seen fit to bestow upon nonresident aliens a vested but conditional property interest, we fail to see how the divestment of that interest by nonoccurrence of the condition upon which it was granted constitutes a deprivation of property without due process of law or contrary to standards of international justice. Nor can we perceive how that conclusion is altered by *79 the fact that nonresident aliens are not likely to obtain actual notice of the proceedings. (26) As noted in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317 [94 L.Ed. 865, 875, 70 S.Ct. 652, 658], "... it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights. [Citations.]" Estate of Poder, 274 Cal. App.2d 786 [79 Cal. Rptr. 484], relied on by claimants, has no applicability to the case at bench.
Lastly, claimants, relying upon Zschernig v. Miller, supra, 389 U.S. 429, Estate of Kraemer, supra, 276 Cal. App.2d 715, and Bethlehem Steel Corp. v. Board of Commissioners, 276 Cal. App.2d 221 [80 Cal. Rptr. 800], contend that Probate Code, section 1026 constitutes an unconstitutional infringement on the exclusive and plenary power of the federal government to deal with foreign relations. The cases relied upon by claimants do not support the unconstitutionality of Probate Code, section 1026. Their rule is that state legislation is invalid as an infringement upon the federal power to deal with foreign relations when "it has a direct impact upon foreign relations and may well adversely affect the power of the central government to deal with those problems." (Zschernig v. Miller, supra, 389 U.S. at p. 441 [19 L.Ed.2d at p. 692, 88 S.Ct. at p. 671]; Bethlehem Steel Corp. v. Board of Commissioners, 276 Cal. App.2d at p. 229.) In both Zschernig (389 U.S. at pp. 434-435 [19 L.Ed.2d at pp. 688-689, 88 S.Ct. at p. 667]) and Bethlehem (276 Cal. App.2d at p. 228) it was expressly found that the state legislation had "more than `some incidental or indirect effect in foreign countries,' and ... great potential for disruption or embarrassment...." Kraemer involved a statute substantially identical to that in Zschernig, and the decision in Kraemer was completely controlled by Zschernig.
The matter of concern to the high court in Zschernig is revealed in the opinion as follows: "It now appears that in this reciprocity area under inheritance statutes, the probate courts of various States have launched inquiries into the type of governments that obtain in a particular foreign nation  whether aliens under their law have enforceable rights, whether the so-called `rights' are merely dispensations turning upon the whim or caprice of government officials, whether the representation of consuls, ambassadors, and other representatives of foreign nations is credible or made in good faith, whether there is in the actual administration in the particular foreign system of law any element of confiscation." (389 U.S. at pp. 433-434 [19 L.Ed.2d at p. 688, 88 S.Ct. at p. 667].)
*80 "That kind of state involvement in foreign affairs and international relations  matters which the Constitution entrusts solely to the Federal Government  is not sanctioned by Clark v. Allen." (389 U.S. at p. 436 [19 L.Ed.2d at p. 689, 88 S.Ct. at p. 668].)
Probate Code, section 1026 does not involve the state in any inquiry into foreign law, administration of foreign law, credibility of foreign governmental officials or any other matter condemned by Zschernig. All that is required by Probate Code, section 1026 is the computation of five years from the date of death of the decedent. The same time period applies to all nonresident aliens alike, regardless of their country of residence, its law or its policies.
It is suggested that, since many foreign countries have reciprocity provisions in their law similar to section 259 of the California Probate Code, the distinction between nonresident aliens and other persons inherent in section 1026 might cause those foreign countries to deny inheritance to all United States citizens. This argument is spurious. By virtue of our federal system, the laws of our 50 states are undoubtedly diverse in respect to the right of succession by nonresident aliens. Indeed, it appears that New Hampshire affords nonresident aliens no right to succeed to real estate at all. (Hanafin v. McCarthy (1948) 95 N.H. 36 [57 A.2d 148]; Lazarou v. Moraros (1958) 101 N.H. 383 [143 A.2d 669].) It has not heretofore been suggested that the refusal of New Hampshire to accord such rights to non-resident aliens or the diverse laws of other states have deterred the finding that reciprocal rights of inheritance exist between California and the U.S.S.R. (See Estate of Larkin, supra, 65 Cal.2d 60.)
It is also suggested that Probate Code, section 1026 constitutes an embarrassment to the conduct of foreign relations in that the federal government will find it difficult to explain why an heir who "appears and demands" within the five-year period is permitted to inherit while one who appears and demands shortly after the expiration of the five-year period is not. The burden of such explanation is inherent in any statutorily prescribed period and, in any event, presumably, such explanation will cause no more embarrassment than the explanation why a nonresident alien may inherit property in California but not in New Hampshire.
Probate Code, section 1026 cannot be characterized as having a "direct impact upon foreign relations," nor is it likely to "adversely affect the power of the central government to deal with" foreign relations. (27) At most, its effect upon foreign relations is "incidental or indirect," and it does not unconstitutionally impinge upon the exclusive and plenary power of the federal government to deal with foreign affairs. (Zschernig v. *81 Miller, supra, 389 U.S. 429; Bethlehem Steel Corp. v. Board of Commissioners, supra, 276 Cal. App.2d 221.)
As to claimants Uliana Andreevna Gumen, Evdokia Andreevna Lavrik, Anna Ivanovna Petlevany and Vera Ivanovna Vinichenko the judgment is reversed and the trial court is instructed to enter judgment that the State of California is entitled by escheat to the distribution of the interests to which those claimants would otherwise have been entitled. Pursuant to rule 26(a) of the Rules of Court, each party shall bear his own costs.
Mosk, J., did not participate herein.
PETERS, J.
I dissent. The majority opinion holds that the interests of four claimants escheat to the State of California because of the provisions of Probate Code section 1026. In my opinion, under the facts of this case, this constitutes a great injustice to these four claimants.
In the first place, the state contends that section 1026 is not a statute of limitations but is part of the substantive law of inheritance. This is a matter of semantics. As the majority opinion points out this case was tried and appealed at a time when section 1026 could apply but was not raised by the state. One day, before the second trial, the state attempted to amend by raising this section. The trial court held that section 1026 was tolled. In so holding, the trial court was clearly correct. The provisions of section 1026 are subject to tolling under proper circumstances. (Estate of Caravas, 40 Cal.2d 33, 41-42 [250 P.2d 593]; Estate of Spinosa, 117 Cal. App.2d 364, 370-372 [255 P.2d 843].) This was a proper case to toll the statute.
The Estate of Gogabashvele, 195 Cal. App.2d 503 [16 Cal. Rptr. 77], was decided on September 12, 1961. The Estate of Larkin, 65 Cal.2d 60 [52 Cal. Rptr. 441, 416 P.2d 473], disapproving the Gogabashvele case, was decided on August 2, 1966. This court had denied a hearing in the Gogabashvele case. What the majority opinion holds is that during this five-year period a reasonably competent attorney should pay no attention at all to the Gogabashvele case and the denial of hearing but should go to the Supreme Court and ask that court to disapprove. This is sheer nonsense. An attorney, reasonably competent, is entitled to rely on a district court opinion, in which a hearing by this court has been denied, and is entitled to consider that that opinion correctly states the law. For this reason, section 1026, which is a statute of limitations, was tolled during this five-year period.
It is also the law that the statute of limitations is waived when it is not pleaded. (Bliss v. Sneath, 119 Cal. 526, 528 [51 P. 848]; Taylor v. Sanford, 203 Cal. App.2d 330, 345 [21 Cal. Rptr. 697].) Here, the state *82 not only failed to plead the provisions of section 1026 at a time after the five-year period prescribed by section 1026 had passed, but proceeded to trial and then to appeal without raising the question. Under such circumstances there was a clear waiver.
It should also be mentioned that this is an escheat case. The state has no proper interest to escheat property that properly and legally belongs to someone else. Escheat statutes should be strictly construed.
For these reasons, I am of the opinion that the four claimants involved in this proceeding are entitled to their proper share of the estate.
NOTES
[*] Brackets together, in this manner [ ] without enclosing material, are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. We thus avoid the extension of quotation marks within quotation marks, which would be incident to the use of such conventional punctuation, and at the same time accurately indicate the matter quoted. In so doing, we adhere to a method of adoption employed by us in the past. (See Chicago Title Ins. Co. v. Great Western Financial Corp. (1968) 69 Cal.2d 305, 311, fn. 2 [70 Cal. Rptr. 849, 444 P.2d 481], and cases there cited.)
[1] The appeal was from the entire judgment, purportedly directed at all 24 survivors. In the briefs, however, the state asserted no claims or contentions with respect to 20 of the survivors and on March 3, 1970, we granted respondents' motion to dismiss as to all of the survivors except Uliana Andreevna Gumen, Evdokia Andreevna Lavrik, Anna Ivanovna Petlevany, and Vera Ivanovna Vinichenko. These four, therefore, are the remaining respondents herein and, as indicated, will be referred to as the claimants.
[2] Actually, the pleading did not specify the code section (see Code Civ. Proc., § 458), but the court permitted an amendment by interlineation at the conclusion of the trial to insert the words "as required by Probate Code, section 1026."
[3] Probate Code section 259 has since been held unconstitutional. (Estate of Kraemer, 276 Cal. App.2d 715 [81 Cal. Rptr. 287].)