[Civ. No. 32292. First Dist., Div. One. Feb. 21, 1974.]

Estate of HERBERT MILTON MURPHY, Deceased.
VETERANS' HOME OF CALIFORNIA, Claimant and Respondent, v.
ALMA R. CHAMBERS et al., Claimants and Appellants.

[Civ. No. 32293. First Dist., Div. One. Feb. 21, 1974.]

Estate of HERBERT MILTON MURPHY, Deceased.
ALMA R. CHAMBERS et al., Plaintiffs and Appellants, v.
VETERANS' HOME OF CALIFORNIA, Defendant and Respondent.

COUNSEL

Ahern, Mooney & Moore and Robert P. Mooney for Claimants and Appellants and for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and Leonard M. Sperry, Jr., Deputy Attorney General, for Claimant and Respondent and for Defendant and Respondent.

OPINION

**ELKINGTON, J.**—The sole issue presented on this consolidated appeal is the constitutionality of Military and Veterans Code sections 1035, 1035.05, 1035.1, 1035.3 and 1038, hereafter sometimes called the "statutes." (Specific statutory references, unless otherwise stated, will be to the Military and Veterans Code.)

There is a Veterans' Home of California (§ 1011) which is maintained for certain aged and disabled veterans (§ 1012) who are "unable to pay for necessary hospital and domiciliary care outside of the home" (§ 1012.1). The home maintains a "post fund" which is used "to provide for the general welfare of the home and its members to include but not limited to providing for operations of the Veterans' Home Exchange, motion picture theater, library, band, and to pay for newspapers, chapel expenses, welfare and entertainment expenses, sport activities, celebrations, and to pay for any necessary insurance to protect property of the fund or the Veterans' Home Exchange, or any other activity for the benefit of the home or its members." (§ 1047.) The post fund includes, among other things, "profits from operation of the Veterans' Home Exchange and post fund operations, all donations to the fund and any moneys or property described in" the statutes here under consideration, sections 1035, 1035.05, 1035.1, 1035.3 and 1038. Sums in excess of $100,000 received by the post fund in any one year are paid into the state's general fund. (§ 1048.)

Section 1035 provides: "All moneys and other personal property of any veteran held by the home, or by its authority, or which is left by such veteran upon the premises of the home, shall, upon the death of the veteran, be held by the home in trust to be paid or delivered by the home upon proof deemed to be proper to the manager, directly and without probate, to the spouse, children, grandchildren, or father or mother of the veteran;

provided, that the manager is hereby empowered to disburse funds of any deceased veteran for payment of funeral expenses or any obligation owed to the home."

Section 1035.05, as relevant to our discussion, states: "All moneys and other personal property of any veteran other than that described in Section 1035 of this code shall, upon the death of such veteran, in the absence of spouse, children, grandchildren, or father or mother pass and descend to and become the property of the Veterans' Home of California for credit to the post fund thereof. If the total value of such property in the State of Calfornia . . . does not exceed three thousand dollars ($3,000), the Veterans' Home shall be entitled, without procuring letters of administration or awaiting the probate of any will, to collect any money due the decedent, receive the property of the decedent . . . upon furnishing . . . an affidavit showing the right of the Veterans' Home to receive such money or property . . . ."

Section 1035.1 recites: "Any will heretofore or hereafter executed by a veteran, whether executed before or after his admission to the home, shall not be valid as to any provision therein contained which purports to dispose, either directly or indirectly, of moneys or personal property to other than his spouse, children, grandchildren, or father or mother. This section does not apply to any veteran who is not a member of the home at the time of his death."

Section 1035.3 provides: "If no spouse, children, grandchildren, or father, or mother are discovered within two years after the death of the veteran, any moneys not exceeding the sum of three thousand dollars ($3,000) held by the home pursuant to Section 1035 and not paid or otherwise delivered to such spouse, children, grandchildren, or father or mother, or otherwise disbursed by the manager pursuant to Section 1035, shall be paid to the post fund. If no spouse, children, grandchildren, or father or mother are discovered within five years after the death of the veteran, any moneys exceeding the sum of three thousand dollars ($3,000) held by the home pursuant to Section 1035 and not paid or otherwise delivered to such spouse, children, grandchildren, or father or mother, or otherwise disbursed by the manager pursuant to Section 1035, shall be paid to the post fund."

The remaining statute in dispute, section 1038, says: "All money deposited with the home for a veteran shall be paid to him on demand, upon his discharge or voluntary departure from the home. If such money is not so demanded at the time of his discharge or departure or within a period of two years thereafter, if such amount does not exceed three thousand

dollars ($3,000), or within a period of five years thereafter, if such amount exceeds three thousand dollars ($3,000), either by such veteran, or, in the event of his death after his discharge or departure, by his heirs, devisees, legatees, or qualified executor or administrator of his estate, such money shall be paid to the post fund."

It will be seen that under the statutes a member of the Veterans' Home is free to use or dispose of as he sees fit, any or all of his money or property during his lifetime. Upon his death while a member, certain near relatives, i.e., spouse, children, grandchildren or parents, become entitled to his entire estate, without any claim by the home. It is only when none of such kin survives the member, that the Veterans' Home succeeds to his estate. And the member may not by his will dispose of his estate contrary to the terms of the statutes.

The member, however, is free at any time to give up his membership and depart from the Veterans' Home. In such event the home has no claim to his money or property, except such funds as are allowed to remain there on deposit and are unclaimed for the periods prescribed by section 1038. The former member's estate may be disposed of by will as he pleases or otherwise succeeded to under the general laws of succession.

Herbert Milton Murphy died while a member of the Veterans' Home. At the time of his death he had more than $3,000 on deposit with the home, and more than $3,000 on deposit in his name with a financial institution. He died intestate, leaving surviving him neither spouse, children, grand-children nor parent. Surviving him were sisters and nieces and nephews who were the interested parties in each of the superior court actions below. The appeals are from judgments which, in effect, held the statutes in question to be constitutional.

■ Appellants contend that the statutes deny "equal protection of the laws" as guaranteed by article I, sections 11 and 21 of California's Constitution and the Fourteenth Amendment to the United States Constitution.

Specifically it is urged: "The Legislature has placed veterans, who are members of the Veterans Home of California at the time of their death, and their heirs in one classification, and veterans, who are not members of the Home at the time of their death, and their heirs in another classification."

■ Preliminarily it should be noted that no person has a right, as against the contrary will of the Legislature, to succeed to the property of a deceased person. " ' "So broad is the power of the state to determine the devolution of title to the property of a person dying and leaving property

within its boundaries that it may take the property itself and deny any right of anyone to succeed thereto either by will or by succession. . . .""'" (*Estate of Horman* (1971) 5 Cal.3d 62, 76 [95 Cal.Rptr. 433, 485 P.2d 785] [cert. den. (1972) 404 U.S. 1015 (30 L.Ed.2d 662, 92 S.Ct. 672)]; *Estate of Zimmerman* (1955) 132 Cal.App.2d 702, 704 [283 P.2d 68].)

On the "equal protection of the laws" issue presented to us, applicable federal law is found in *McGowan* v. *Maryland* (1961) 366 U.S. 420, 425-426 [6 L.Ed.2d 393, 398-399, 81 S.Ct. 1101], as follows: ". . . Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. . . ."

More recently the nation's high court in *San Antonio School District* v. *Rodriguez* (1973) 411 U.S. 1, 40 said: ". . . A century of Supreme Court adjudication under the Equal Protection Clause affirmatively supports the application of the traditional standard of review, which requires only that the State's system be shown to bear some rational relationship to legitimate state purposes. . . ."

California's Supreme Court, in *Bilyeu* v. *State Employees' Retirement System* (1962) 58 Cal.2d 618, 623 [25 Cal.Rptr. 562, 375 P.2d 442], has spoken on the subject in this manner: "There is no constitutional requirement of uniform treatment, but only that there be a reasonable basis for each classification. In *Sacramento Mun. Util. Dist.* v. *Pacific Gas & Elec. Co.*, 20 Cal.2d 684 [128 P.2d 529], we said at page 693: 'Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. [Citations.] A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it.' . . ."

California has a proper interest in the care and welfare of its aged and disabled veterans, particularly those who are unable to pay for their own domiciliary care. This interest is manifested by the existence of the Veterans' Home and its post fund. Another legitimate public purpose is the management of the home at a cost no greater than is consistent with the

welfare and proper care of its members. These interests are given reasonable accommodation by the statutes. The mild limitation of the member's right to transfer his property upon death has little if any adverse impact upon his welfare.

Appellants appear to concede that this is so. As we have seen, their contention of constitutional affront springs from the statutes' placing of those who are no longer members of the home in a *classification* where they are subject to different rules for devolution of their property upon death.

The issue before us then, is whether this criticized classification bears "some rational relationship to legitimate state purposes" (see *San Antonio School District* v. *Rodriguez, supra,* 411 U.S. 1, 40), or whether " 'it is palpably arbitrary and beyond reasonable doubt erroneous' " (see *Bilyeu* v. *State Employees' Retirement System, supra,* 58 Cal.2d at p. 623).

When a member has departed from the Veterans' Home, it is to make a new life for himself elsewhere. He is then often aided in one way or another by relatives or friends; this must be so, for upon entering the Veterans' Home, "aged and disabled," he had been unable to pay for his "domiciliary care." The burden of such care will have passed from the state to others, perhaps more distant relatives than those permitted to succeed to the member's property under the statutes, or even upon nonrelatives. In such a situation it may reasonably be deemed inequitable, and therefore beyond any legitimate state purpose, to hold the former member to the statutes' terms and deny him the right to dispose of property upon his death as he chooses.

These considerations alone (we need not consider others) impel us to conclude that there was a reasonable legislative basis for the criticized classification of the statutes. There was accordingly no violation of the constitutional demand for "equal protection of the laws."

The judgments are affirmed.

Molinari, P. J., and Sims, J., concurred.