[No. A043767. First Dist., Div. Four. Sept. 29, 1989.]

JEROME MAUTNER, as Public Administrator, etc., Plaintiff and Appellant, v.
JOE H. PERALTA et al., Defendants and Respondents.

**COUNSEL**

Robert Westmeyer, County Counsel, for Plaintiff and Appellant.

D. Richard Barelli, Parnie & Barelli, Joseph Hoffman, Joann M. Cook, Weinberg, Campbell & Stone and Dennis E. Powell for Defendants and Respondents.

**OPINION**

ANDERSON, P. J.—Does former Probate Code section 631[1] afford absolute immunity to a bank which transfers funds in a decedent veteran's deposit account to an alleged beneficiary proceeding under a former section 630 affidavit despite actual notice of the superior, statutory claim of the California Veterans Home (Home)? We conclude it does not and reverse the judgment.

### I. FACTUAL BACKGROUND

This appeal follows a judgment of dismissal upon the sustaining of a demurrer without leave to amend. ██ In testing the sufficiency of the complaint against the demurrer, we treat the demurrer as " 'admit[ting] the truth of all material factual allegations in the complaint. . . .' " (*Kendall* v. *Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 493 [220 Cal.Rptr. 818, 709 P.2d 837], quoting *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) Further, adhering to a policy of liberal construction, the complaint will withstand demurrer if, upon consideration of

---

[1] Unless otherwise indicated, all further statutory references are to the Probate Code.

This case centers on former chapter 10 of division 3, governing disposition of estates without administration, and in particular former sections 630 and 631. Chapter 10 was repealed by Statutes 1986, chapter 783, section 9, operative July 1, 1987. Division 8 (§ 13000 et seq.) of the code now governs the disposition of estates without administration. Section 13053, subdivision (b) preserves prior law where a payment, delivery or transfer in question was made pursuant to former sections 630 to 632, inclusive, prior to July 1, 1987. The transfer here occurred "on or about July 10, 1984" and thus the former provisions govern the present appeal.

all the allegations so construed, it appears plaintiff is entitled to any relief against defendant. (*Glaire* v. *La Lanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357]; *Air Quality Products, Inc.* v. *State of California* (1979) 96 Cal.App.3d 340, 347 [157 Cal.Rptr. 791].)

We derive the following summary from the allegations in the second amended complaint. Gugliemno Canevoni took up residency at the Home in Yountville on September 22, 1981, where he resided until his death on May 28, 1984. Canevoni died testate, leaving his entire estate to his friends, Joe H. and Jennie Peralta, and naming Joe as executor of the will.

At the time of his death Canevoni had a total of $13,028.25 on deposit at the Salinas Main Branch of Wells Fargo Bank, N.A.[2] On June 19, 1984, the Home sent a letter, certified mail, to the operations officer at the Salinas branch (1) notifying the bank that Canevoni had died leaving no surviving spouse, children, grandchildren or parents; (2) explaining that pursuant to sections 1035.05 and 1035.1 of the Military and Veterans Code (hereafter sections 1035.05 and 1035.1), the Home believed it was entitled to those deposits; and (3) requesting the bank to place a hold on the identified accounts. Wells Fargo received the letter on June 26 and flagged the accounts.

Also, on June 19, the Home notified the Peraltas by letter that, pursuant to sections 1035.05 and 1035.1, the Home believed it was entitled to recover all personal property of the decedent other than certain personal effects of no substantial value located at the Home. The Home appended a copy of the statutory provisions to the letter and enclosed a declaration relating to disposition of the decedent's personal effects. Joe Peralta signed the declaration on July 6 and returned it to the Home prior to July 10.

Then, on July 10, Joe Peralta filed with Wells Fargo a declaration under penalty of perjury pursuant to former section 630, indicating that he was the sole beneficiary named in decedent's will and entitled to receive all funds of decedent on deposit at the bank. Wells Fargo released the funds to Peralta.

On August 30, 1984, and on several occasions thereafter, Jerome J. Mautner, Public Administrator for Napa County (appellant), asked Wells Fargo to reimburse decedent's estate in an amount equal to the funds disbursed to Joe Peralta. Initially, the bank asked for a chance to review the possibility of returning the funds, requesting that litigation not ensue but, since March 13, 1985, the bank has refused to pay anything.

---

[2] Respondents herein are Wells Fargo Bank, N.A., and its employees Linda McLaughlin and Sergio Botta (referred to collectively hereafter as Wells Fargo).

On December 19, 1984, the Napa County Superior Court appointed appellant as administrator with will annexed of decedent's estate, and issued letters of administration that day.

Appellant filed this lawsuit against the Peraltas and Wells Fargo on June 21, 1985, alleging causes of action for negligence, conversion, and constructive trust. Wells Fargo successfully moved for judgment on the pleadings, arguing that the complaint failed to state a cause of action against the bank because (1) former section 631 operated to discharge the bank from any liability for paying the funds on deposit in decedent's accounts to Joe Peralta and (2) the bank had no duty to the Home because the Home failed to adhere to the requirements of sections 1035.05 and 1035.1. The trial court granted the motion but allowed appellant 30 days to amend to challenge the constitutionality of former sections 630 and 631. Appellant filed an amended complaint, alleging two additional causes for "complaint for money" and declaratory relief. The court sustained Wells Fargo's demurrer without leave to amend.

## II. STATEMENT OF GROUNDS

Before turning to the merits, we resolve a preliminary issue relating to the trial court's duty to state the legal basis for its ruling on the demurrer. ■ Appellant contends the order sustaining the demurrer was improper because it did not state the grounds for the decision. Whenever a court sustains a demurrer, Code of Civil Procedure section 472d requires the court to state the specific ground or grounds for the ruling. A court satisfies this requirement by referencing the appropriate paragraphs of the demurrer or supporting points and authorities. (Code Civ. Proc., § 472d; *E.F. Hutton & Co.* v. *City National Bank* (1983) 149 Cal.App.3d 60, 65, fn. 1 [196 Cal.Rptr. 614].) An order made " '. . . per points and authorities in moving papers . . .' " does not suffice. (*Id.,* at pp. 64-65.)

Wells Fargo demurred on the basis that the complaint did not state facts sufficient to constitute any cause of action against the bank or its defendant employees. In its ruling the court specifically stated: "[I]t appearing from the points and authorities filed herein that the second amended complaint does not state facts sufficient to constitute a cause of action against [defendants], IT IS HEREBY ORDERED that the demurrer . . . is sustained without leave to amend."

The court's specification here satisfies the Code of Civil Procedure section 472d requirement of identifying the grounds for sustaining the demurrer. Wells Fargo's sole ground has always been that the complaint does not state facts sufficient to state a cause of action. Code of Civil Procedure section

472d does not mandate a detailed statement explaining the court's reasons for sustaining the demurrer on the ground specified. (*Berkeley Police Assn. v. City of Berkeley* (1977) 76 Cal.App.3d 931, 943 [143 Cal.Rptr. 255].)

## III. STATUTORY SCHEMES

### A. *Military and Veterans Code Provisions*

In the absence of certain favored heirs, the Military and Veterans Code establishes the Home as the statutory heir to all moneys and other personal property of a veteran who became a member of the Home prior to January 1, 1984. Section 1035.05, subdivision (b), provides in pertinent part: "All moneys and other personal property of any veteran other than that described in Section 1035 [relating to property held by the Home or left on the premises] shall, upon the death of the veteran, in the absence of a spouse, children, grandchildren, or father or mother, pass and descend to and become the property of the home for credit to the post fund. . . ."[3]

Again, as to veterans who became members of the Home prior to January 1, 1984, section 1035.1, subdivision (b), prevents testamentary disposition by such a veteran to any except certain favored near relatives, if he was a member of the Home at the time of death: "Any will . . . executed by a veteran, whether executed before or after admission to the home, shall not be valid as to any provision therein contained which purports to dispose, either directly or indirectly, of moneys or personal property to other than the spouse, children, grandchildren, or father or mother of the veteran. *This section does not apply to any veteran who is not a member of the home at the time of death.*"

This statutory scheme has withstood state and federal equal protection challenges. In *Estate of Murphy* (1974) 37 Cal.App.3d 411 [112 Cal.Rptr. 317], the Court of Appeal held there was a reasonable legislative basis for distinguishing between veterans who died in the home (where they were cared for by the state) and those who left the home, to be cared for by others, perhaps even distant relatives or nonrelatives. (At p. 417.)

Under the facts as set forth in the complaint, sections 1035.05 and 1035.1 operate to void Canevoni's will, which purported to leave all his moneys

---

[3] If the total value of the veteran's property in California (above certain amounts not germane to this appeal) does not exceed $3,000, the Home may proceed to collect money due the decedent without procuring letters of administration or probating the will, by presenting the holder of the funds with an affidavit showing the Home's right to receive the money. (§ 1035.05, subd. (b).)

and personal property to nonrelatives, and to substitute the Home as his statutory heir.

### B. *Probate Code Provisions*

Former section 630 et seq. set forth procedures for the nonprobate distribution of a decedent's personal property when the gross value of decedent's property in California did not exceed $60,000 (with a $10,000 cap for real property). If these limitations applied, the sole beneficiary, or all of the beneficiaries, under the will could collect money due the decedent, without procuring letters of administration or awaiting probate of the will, by providing the entity owing the money with an affidavit or declaration under penalty of perjury showing the right of the affiant or affiants to receive the money. (Former § 630, subd. (b).)

Former section 631 discharged a bank or other entity from any further obligation to pay money when it transferred the decedent's funds in reliance on such an affidavit: "The receipt of such affiant or affiants shall constitute sufficient acquittance for any payment of money or delivery of property made pursuant to the provisions of this article and shall fully discharge such person, representative, corporation, officer or body from any further liability with reference thereto, without the necessity of inquiring into the truth of any of the facts stated in the affidavit. But such payment or transfer does not preclude administration when necessary to enforce payment of the decedent's debts."

### IV. DISCUSSION

■ Appellant argues that notwithstanding former section 631, the complaint stated causes of action for (1) breach of the bank's duty to exercise reasonable care in transactions with its depositors and their deposits, and (2) breach of its contractual obligation to pay out the decedent's deposits on behalf of the estate. Wells Fargo counters that the intent of section 631 is to provide absolute immunity to a bank which distributes property pursuant to a "630" affidavit.

The parties devote most of their briefing to the issue of whether former section 631, as applied in this instance to afford Wells Fargo absolute immunity, unconstitutionally deprived the Home of property without due process of law. The trial court originally granted Wells Fargo's motion for judgment on the pleadings but gave appellant leave to amend to raise the constitutionality of its interpretation of the immunity statute. ■ On review, we test the validity of the court's actions, not the reasons for its actions. (*E.L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497,

504, fn. 2 [146 Cal.Rptr. 614, 579 P.2d 505].) ■ Thus, we need not reach the constitutional claims if the trial court should have overruled the demurrer because former section 631, properly interpreted, did not provide a defense to appellant's causes of action. ■ It is well settled that reviewing courts should refrain from deciding constitutional questions unless absolutely necessary. (*Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 66 [195 P.2d 1]; *California Restaurant Assn.* v. *Henning* (1985) 173 Cal.App.3d 1069, 1073 [219 Cal.Rptr. 630].) ■ We undertake to resolve this appeal by interpreting the relevant statutory provisions.

It is arguable that former section 631, according to its literal meaning, provides absolute immunity to a bank when it disburses funds with one hand, holding a "630" affidavit in the other. ■ Where the language of a statute is unambiguous, reviewing courts need not engage in statutory construction or otherwise search for indicia of legislative intent. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Nevertheless, although ambiguity ordinarily is a condition precedent to statutory interpretation, our rules of statutory construction also teach us that courts should look to the substance rather than the letter of the statute if absurd or unjust results follow from a literal interpretation. (*Smith* v. *Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 412, 420 [128 Cal.Rptr. 572].)

■ Another rule of statutory construction teaches us that statutes and codes blend into each other, and should be regarded as constituting but a single statute. (*Natural Resources Defense Council, Inc.* v. *Arcata Nat. Corp.* (1976) 59 Cal.App.3d 959, 965 [131 Cal.Rptr. 172].) And in ascertaining legislative intent, we are further aware that our mandate is to construe together statutes which are "in pari materia" so that the whole body of law may be harmonized and retain its effectiveness. (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814 [114 Cal.Rptr. 577, 523 P.2d 617].) " ' "Statutes in pari materia are those which relate to the same person or thing, or to the same class of persons or things. In the construction of a particular statute, or in the interpretation of any of its provisions, all acts relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law." ' " (*Isobe* v. *Unemployment Ins. Appeals Bd.* (1974) 12 Cal.3d 584, 590 [116 Cal.Rptr. 376, 526 P.2d 528].) The Probate Code and Military and Veterans Code provisions at issue in this appeal are "in pari materia": both relate to the disposition of a decedent's personal property, and both provide for summary collection of such property under certain specified conditions.

Guided by these principles, we examine the statutes involved in the instant action.

■ The purpose of former section 630 is self-evident: it provides for summary, nonprobate distribution of small personal property estates. This purpose is accomplished by allowing a debtor, such as a depository bank, to pay out in reliance on the affidavit without inquiring into the truth of its allegations, and by simultaneously protecting the debtor when it acts in reliance thereon. Without these two ingredients, the bank or other entity owing funds to decedent would become a mini-probate court, thus defeating the very purpose of the statute.

■ Wells Fargo argues there can be no liability against it because it was duty bound to transfer the funds to Mr. Peralta upon receipt of the "630" affidavit. Former section 630 states that the beneficiary *may* bypass probate and collect money due the decedent upon furnishing the affidavit of right. It is silent on the recipient's obligation to transfer the funds, but the implication is that the beneficiary has the right to possession upon furnishing the affidavit. This makes sense, and former section 631 obviously applies, in cases where the bank or other holder acts on a single affidavit because it has no reason to doubt the averments, and it has no duty to look behind them. However, the procedures are silent on how to proceed in the face of competing claims.

The situation changes dramatically when the holder has actual notice of a superior claim. Wells Fargo has argued that the Home's letter informing it of Canevoni's death and the Home's entitlement to his estate pursuant to the applicable statutory provisions was of no legal effect and did not constitute a valid challenge to Peralta's right to collect. Had the Home delivered an affidavit of right instead of a letter, the bank's obligation, it claims, would be different. But it is clear that the Home had no way to participate in the summary affidavit procedures.

Former section 630 makes Canevoni's estate susceptible to distribution by the holder of personal property without letters or probate, and without inquiring into the truth of the averments. Section 1035.5, subdivision (b), makes the Home the statutory heir and, as to estates less than $3,000, permits the Home to proceed in a vein similar to the section 630 proceeding. Reading the pertinent Probate Code and Military and Veterans Code provisions together as we must, it becomes apparent that the Home is vulnerable to section 630 summary proceedings by nonrelative legatees where the estate is greater than $3,000 but less than $60,000. The estate was too large for the Home to avail itself of section 1035.05, subdivision (b) (see fn. 3), and the Home was not a proper party to proceed under section 630, subdivi-

sion (b), being neither one of the listed relatives (or in a fiduciary relationship to such relatives) or the sole beneficiary under decedent's last will.[4]

In order to harmonize these similar but seemingly inconsistent provisions and give effect to both schemes, we hold that the reasonable and practical construction of former section 631 renders its grant of immunity inapplicable where the holder has actual notice of a statutory heir's superior claim and a request to "hold" distribution of decedent's funds *prior to* receiving a "630" affidavit from an alleged legatee.

Because the Home, although Canevoni's sole successor, could not proceed by way of affidavit, it did the only thing short of court action to secure its position and alert the bank of its status: provide notice, which, contrary to Wells Fargo's assertion, has legal effect. Notice was timely—only three weeks after decedent's death, and three weeks before Peralta sought the funds. According to the complaint, the bank put the funds on hold, but then proceeded to pay out on Peralta's affidavit. We do not think the Legislature intended former section 631 to operate as a shield in the face of actual notice of the Home's superior, section 1035.05 claim to the assets. Under these circumstances, Wells Fargo was not acting "pursuant to the provisions of this article" when it delivered Canevoni's deposits to Peralta and, thus, it cannot claim the benefit of the statutory immunity. (§ 631.) Notice destroyed any reliance Wells Fargo reasonably could place on the affidavit, and the purpose of the section 631 immunity is no longer served.

The contrary result is absurd. It allows and encourages Wells Fargo to ignore actual notice of the Home's superior claim, while forcing the Home to take immediate legal action to protect its position or recapture the funds, notwithstanding that the Home had no knowledge of Wells Fargo's intention to honor Peralta's affidavit. The fact that the bank did not and could not pass title to, only possession of, the funds does not change the results. As between the Home legally pursuing the Peraltas and the bank simply holding the funds, surely the latter course is more expeditious.

Wells Fargo is in no different situation than if simultaneously presented with two "630" affidavits. Obviously the bank could not distribute the deposits to both claimants and would be faced with searching behind the affidavits, initiating an interpleader action, or simply holding the funds and

---

[4]Note that the 1988 amendments to section 1035.05, operative July 1, 1989, add subdivision (c) which states: "For the purpose of application to this section of the provisions of the Probate Code governing distribution of property, the home shall be deemed to be a beneficiary of the decedent." (Stats. 1988, ch. 1199, § 23.5.)

waiting for the claimants to open probate and resolve the matter in probate court.[5]

Without an absolute defense, the complaint sets forth allegations sufficient to state negligence and contract causes of action. ■ With respect to the negligence count, Wells Fargo has a duty to act with reasonable care in its transactions with depositors including, in the case of a deceased depositor, with decedent's estate. (*Bullis* v. *Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 808 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642].) ■ The complaint alleges that the Home notified the bank of its entitlement to Canevoni's deposits, set forth the basis for its entitlement, and requested the bank to place a hold on the identified accounts. It further states that as a result of this letter, the bank "flagged" the appropriate accounts. Nevertheless, when Peralta filed his affidavit three weeks later, the bank transferred the assets to him, directly injuring the estate in the sum of $13,018.25. The allegations in the first cause of action survive the demurrer.

So do the allegations in the fifth cause of action (complaint for money). There, appellant alleged that (1) at the time of his death Canevoni maintained the two subject accounts at the Salinas branch; (2) as duly appointed administrator of Canevoni's estate, appellant was entitled to recover the deposits; (3) appellant requested the bank to forward the funds to him but Wells Fargo refused to do so, despite knowledge of his interest in the property; and (4) the amount of $13,018.15 is still owing and unpaid.

The judgment is reversed. Wells Fargo to pay costs on appeal.

Poché, J., and Perley, J., concurred.

---

[5] Note that under the new provisions governing collection of personal property without probate, if the holder refuses to deliver decedent's property within a reasonable period of time, the successor may seek judicial resolution of a conflicting claim by filing suit against the holder pursuant to section 13105, subdivision (b). The successor will be entitled to attorney fees only if the court finds the holder acted unreasonably.