**Sequoia Di ANGELO, Plaintiff,**

v.

**WELLS FARGO, NA., Defendant.**

Civil Action No. H–14–2092

United States District Court, S.D. Texas, Houston Division.

Signed August 14, 2015

Filed August 17, 2015

Andrew Benjamin Bender, The Bender Law Firm PLLC, Houston, TX, for Plaintiff.

Harry Arthur Herzog, Herzog Carp, Houston, TX, for Defendant.

## ORDER

DAVID HITTNER, United States District Judge

Pending before the Court is Well Fargo's Motion for Summary Judgment (Document No. 22). Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted.

## I. BACKGROUND

This case arises out of a dispute over the disposition of a decedent's bank accounts. Between 2001 and 2012, Martin Schmidt ("Schmidt") opened five bank accounts in a Castro Valley, California branch of Defendant Wells Fargo, N.A. ("Wells Fargo"). On July 28, 2013, Schmidt and his son Denali died in an avalanche while mountain climbing in Pakistan. On September 1, 2013, Schmidt's daughter, Plaintiff Sequoia Di Angelo ("Di Angelo"), went to a Wells Fargo branch in Houston, Texas, to gather information on Schmidt's accounts. Di Angelo claims a Wells Fargo employee told her she needed her father's death certificate and will to receive information about the accounts. Di Angelo also alleges the Wells Fargo employee told her that the employee could not place a note on the accounts indicating Di Angelo's claim, but that no one else would be able to access the funds without a death certificate and will and that a court would likely be involved due to the amount of money at issue.

Subsequently, on October 2, 2013, Giovannina Cantale ("Cantele"), Schmidt's widow, went to the California Wells Fargo branch. Cantele provided Wells Fargo with Schmidt's death certificate and a California Affidavit of Collection of Estate Assets in which she swore, among other things, that she was the sole beneficiary of the accounts. After receiving those documents, Wells Fargo claims it properly distributed the funds in the accounts to Cantele pursuant to California Probate Code §§ 13100–13106.

In November 2013, Di Angelo returned to the Wells Fargo branch in Texas with copies of Schmidt's will and death certificate. Di Angelo alleges the will shows Schmidt devised the funds at issue to her.[1] During this visit, Di Angelo claims a Wells Fargo employee told her no accounts existed under Schmidt's name. During another visit, Di Angelo alleges a different Wells Fargo employee informed her that Cantale had emptied and closed the accounts from the California branch.

On June 20, 2014, Di Angelo filed suit in the 165th Judicial District Court of Harris County, Texas against Defendant Wells Fargo, alleging negligence, gross negligence, promissory estoppel, and conversion. Wells Fargo removed the case to this Court on July 22, 2014. Wells Fargo now moves for summary judgment on all claims.[2]

## II. STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV.

---

1. The parties dispute whether Di Angelo is entitled to the funds at issue pursuant to Schmidt's purported will. For the purposes of this motion and order, the Court will assume, without deciding, that Di Angelo may have been entitled to the funds under the will.

2. Di Angelo agrees summary judgment should be granted as to her conversion claim. *Plaintiff's Response to Defendant's Surreply*, Document No. 30.

P. 56(a). The court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir.1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co, v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir.1993) (citation omitted).

But the nonmoving party's bare allegations, standing alone, are insufficient to create a material dispute of fact and, defeat a motion for summary judgment *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir.1994). If a reasonable jury could

not return a verdict for the nonmoving party, then summary judgment is appropriate. *Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505. The nonmovant's burden cannot be satisfied by "conclusory allegations, · unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir.2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)). Furthermore, it is not the function of the court to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n. 30 (5th Cir.1992). Therefore, "[a]lthough we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir.2000).

### III. LAW analysis

Wells Fargo contends summary judgment should be granted on Di Angelo's claims because, under California Probate Code § 13106, it has been discharged from any liability stemming from its distribution of Schmidt's funds to Cantale. California Probate Code § 13106(a) states;

> If the requirements of Sections 13100 to 13104,[3] inclusive, are satisfied, receipt by the holder of the decedent's property of the affidavit or declaration constitutes

---

**3.** Section 13100 authorizes a successor of a decedent whose estate does not exceed $150,000 to collect property without procuring tetters of administration or awaiting probate. Section 13101 outlines the requirements of the California Affidavit of Collection of Estate Assets, including the decedent's name, date and place of death, and various statements to ensure compliance with the other sections of the statute. Section 13101 also

requires the attachment of a copy of the decedent's death certificate to the affidavit or declaration. Section 13102 discusses evidence of ownership if required by the holder of the property at issue. Section 13103 discusses the rules regarding real property. Section 13104 discusses the requirements regarding proof of identity of the person executing the affidavit or declaration. See CAL. PROB. CODE §§ 13100-13104,

sufficient acquittance for the payment of money, delivery of property, or changing registered ownership of property pursuant to this chapter and discharges the holder from any further liability with respect to the money or property. The holder may rely in good faith on the statements in the affidavit or declaration and has no duty to inquire into the truth of any statement in the affidavit or declaration.

■ Cal. Prob. Code § 13106(a). The immunity granted by § 13106 may be lost, however, if the holder of the decedent's property has "actual notice" of a superior statutory claim and receives "a request to 'hold' distribution of decedent's funds *prior* to receiving a [§ 13101] affidavit" from that claimant *Mautner v. Peralta,* 215 Cal.App.3d 796, 806, 263 Cal.Rptr. 535 (Ct.App.1989) (emphasis in original).

■ The parties do not dispute that the California Wells Fargo branch received an affidavit and death certificate from Cantale that satisfied die statute's requirements as outlined in sections 13100 through 13104, including the requirement that Cantale promise that "no other person has a superior right to the interest of the decedent in the described property."[4] *See* CAL. PROB. CODE § 13101(9). However, Di Angelo contends Wells Fargo received actual notice of a superior claim when she went to the Texas branch and attempted to put a hold on Schmidt's account. Wells Fargo contends Di Angelo's oral representation to the Wells Fargo representative did not constitute actual notice in this context.

In *Mautner,* the California Veterans Home (the "Home") sent a letter to a bank notifying the bank of the Home's statutory claim to a decedent's deposit account. In response, the bank put a hold on the account. Three weeks later, a friend of the decedent filed a declaration under the California Probate Code with the bank indicating he was the sole beneficiary named in the decedent's will and thus entitled to receive the funds in the account. In response, the bank released the decedent's funds to the friend. The court found the Home could not participate in the typical affidavit/declaration procedures under the Probate Code, and thus the letter operated as actual notice to the bank that a superior statutory claim to the funds may exist. Therefore, it was improper for the bank to later release the funds to the friend who filed the declaration. The court in *Mautner* compared the situation in that case to a scenario in which a bank received two § 13101 affidavits at the same time.

Unlike *Mautner,* this case is not comparable to a situation in which Wells Fargo receives two simultaneous affidavits with death certificates attached. Instead, when Di Angelo first visited the Texas branch in September, she had an oral conversation with a Wells Fargo employee during which she provided no written substantiation of her claim that she was entitled to the funds in Schmidt's accounts.[5] This conversation does not constitute sufficient actual notice to overcome Wells Fargo's immunity under § 13106. Therefore, pursuant to § 13106, Wells Fargo is discharged from any further liability with

4. Wells Fargo's Motion for Summary Judgment, Document No. 22, Exhibit 2 at 1 (California Affidavit of Collection of Estate Assets). Di Angelo does dispute the accuracy of Cantale's statement in her affidavit that no other person has a superior interest in the property. However, Wells Fargo relied on that statement in good faith and, by statute, did not

have a duty to inquire into the truth of that statement,

5. It is undisputed that Di Angelo did not present either Schmidt's death certificate or Ms will to Wells Fargo during her September visit to the Texas branch.

respect to the funds in the accounts. Accordingly, Wells Fargo's motion for summary judgment is granted,

### IV. CONCLUSION

Based on the foregoing, the Court hereby

**ORDERS** that Well Fargo's Motion for Summary Judgment (Document No. 22) is **GRANTED.**

The Court will issue a separate Final Judgment.

### ORDER

Because the Court has dismissed all claims asserted in this lawsuit by Plaintiff Sequoia Di Angelo against Defendant Wells Fargo, N.A., the Court hereby

**ORDERS** that Plaintiff Sequoia Di Angelo's case is **DISMISSED.**

**THIS IS A FINAL JUDGMENT.**